06-0735-cv
Manuel Puello v. BCIS

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued: November 7, 2007      Decided: December 20, 2007)

Docket No. 06-0735-cv

_____

MANUEL PUELLO,

*Petitioner-Appellant*,

—v.—

BUREAU OF CITIZENSHIP AND IMMIGRATION SERVICES,

*Respondent-Appellee*.

_____

B e f o r e : CABRANES, SACK, and KATZMANN, *Circuit Judges*.

_____

Appeal from a judgment of the United States District Court for the Southern District of New York (Keenan, *J.*) granting summary judgment to respondent-appellee and affirming the denial of the petitioner's naturalization application by the Bureau of Citizenship and Immigration Services (BCIS). The BCIS and district court held that, as someone who had been convicted of an aggravated felony after the enactment of the 1990 amendments to the Immigration and Nationality Act, the petitioner could not show the good moral character necessary for naturalization. The petitioner contends that he was actually convicted, for purposes of the statute, on the date he entered his guilty plea, which was prior to the enactment of the amendments. As such, the petitioner argues that he should be permitted to show his good moral character, notwithstanding his conviction of an aggravated felony. The district court held that, for purposes of the Act, the date of conviction is either the sentencing date or the date of entry of the judgment, and therefore the petitioner was convicted after the amendment to the statute. We **AFFIRM** the district court.

Counsel for Petitioner-Appellant: MATTHEW L. GUADAGNO, (Jules E. Coven, Kerry W. Bretz, *of counsel*) Bretz & Coven, LLP, New York, NY.

Counsel for Respondent-Appellee: F. JAMES LOPREST, Special Assistant United States Attorney (Kathy S. Marks, Assistant United States Attorney, *of counsel*) *for* Michael J. Garcia, United States Attorney for the Southern District of New York, New York, NY

KATZMANN, Circuit Judge:

This case calls on us to decide when a "conviction" occurs for purposes of the naturalization provisions of the Immigration and Nationality Act (INA), 8 U.S.C. § 1101(f)(8) (as amended by the Immigration Act of 1990, Pub. L. 101-649, Title V, 104 Stat. 4978, 5051 (Nov. 29, 1990)). The petitioner-appellant, Manuel Puello, appeals from a decision of the United States District Court for the Southern District of New York (John F. Keenan, *J.*) affirming the denial by the respondent-appellee Bureau of Citizenship and Immigration Services (BCIS) of Puello's application for naturalization. Under the 1990 amendments to the INA, if a person is "convicted" of an aggravated felony after the date of enactment of the statute, November 29, 1990, that person is statutorily precluded from establishing the "good moral character" required for naturalization. 8 U.S.C. § 1101(f)(8); 8 C.F.R. § 316.10(b)(1)(ii). In pertinent part, the INA defines "conviction" as a "formal judgment of guilt of the alien entered by a court." 8 U.S.C. § 1101(a)(48)(A). Puello pleaded guilty to an aggravated felony, conspiracy to possess cocaine with intent to distribute, on December 12, 1989. He was sentenced on April 3, 1991, and the district court entered judgment against him on April 10, 1991.

Puello argues that the date of his conviction was the date of his guilty plea, which was *before* the amendment to the INA became effective. BCIS contends, and the district court held,

that the date of Puello's conviction was either his sentencing date or the date judgment was entered against him – both of which occurred *after* the amendment of the INA. If Puello is correct, the statute does not preclude him from proving his good moral character; conversely, if BCIS is correct, Puello cannot prove his good moral character and is barred from naturalization. We have not yet had occasion to address this question. For the reasons stated below, we affirm the district court's decision.

BACKGROUND

Petitioner-appellant Manuel Puello is a fifty-one year-old immigrant from the Dominican Republic. He has been a lawful permanent resident of the United States since October 14, 1974, and is married to a United States citizen. On September 21, 1989, a Southern District of New York grand jury indicted Puello on charges of possession with intent to distribute a controlled substance, and conspiracy to possess with intent to distribute a controlled substance, arising out of his negotiations to sell approximately two kilograms of cocaine to a confidential informant. Puello pleaded guilty to the conspiracy count before United States District Judge Robert Patterson on December 12, 1989. Puello's sentencing did not occur, however, until April 3, 1991, when Judge Patterson sentenced Puello to time served and four years of supervised release. The clerk filed the Judgment in a Criminal Case on April 10, 1991. The judgment indicates that the court sentenced Puello to a below-guidelines sentence on motion of the government as a result of Puello's substantial assistance, perhaps explaining the lengthy delay between Puello's guilty plea and his sentencing.

Puello applied for United States citizenship on October 5, 2001. In his application, Puello responded affirmatively to the question asking whether he had ever been convicted of a crime. On September 13, 2002, following an investigation, BCIS informed Puello that federal immigration regulations rendered him ineligible for naturalization. In its decision denying

Puello's application, BCIS noted that, under 8 C.F.R. § 316.2(a)(7), an applicant must establish that he "has been and continues to be a person of good moral character."  BCIS then quoted 8 C.F.R. § 316.10(b), which states that an "applicant shall be found to lack good moral character, if the applicant has been . . . convicted of an aggravated felony . . . on or after November 29, 1990."  The decision explained that Puello's federal conviction occurred on April 3, 1991.  Because Puello's conviction was for an aggravated felony, as defined by 8 U.S.C. § 1101(a)(43)(B), he was therefore "precluded from establishing good moral character since [his] conviction occurred subsequent to November 29, 1990."  Puello requested a review hearing, arguing that BCIS had erred:  According to Puello, his conviction occurred on December 12, 1989, the date of his guilty plea.  On February 28, 2003, the BCIS District Director affirmed the denial of Puello's application.

On June 6, 2003, Puello filed a petition for *de novo* review of the denial of his application in the United States District Court for the Southern District of New York.  *See* 8 U.S.C. § 1421(c) ("A person whose application for naturalization under this subchapter is denied . . . may seek review of such denial before the United States district court . . . .  Such review shall be *de novo*, and the court shall make its own findings of fact and conclusions of law . . . .").  Both parties agreed to the material facts and moved for summary judgment.  The district court issued an opinion and order granting BCIS's motion for summary judgment and affirming the denial of Puello's application on December 13, 2005.  *See Puello v. Bureau of Citizenship & Immigration Servs.*, 418 F. Supp. 2d 436 (S.D.N.Y. 2005).  The district court held that the date of Puello's conviction was either his sentencing date or the date the judgment was entered on the docket, both of which occurred after November 29, 1990.  *Id.*  Puello timely filed this appeal.

DISCUSSION

**Standard of Review**

We review *de novo* a district court's grant of summary judgment. *Sheppard v. Beerman*, 317 F.3d 351, 354 (2d Cir. 2003). Summary judgment is properly granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In this case, the parties agree to all material facts – the critical issue is the interpretation of the definition of "conviction" in the INA. We review such questions of statutory interpretation *de novo*. *Auburn Hous. Auth. v. Martinez*, 277 F.3d 138, 143 (2d Cir. 2002).

**The Meaning of the Word "Conviction" in the INA**

In this case, our principal task is to determine whether, under the definition of "conviction" in 8 U.S.C. § 1101(a)(48)(A), a "formal judgment of guilt of the alien entered by a court" occurs at the time of the alien's guilty plea to a criminal charge, or on the date of sentencing or entry of the judgment. "Statutory construction . . . is a holistic endeavor." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 371 (1988). To interpret the terms of a statute, we look first to the statutory language itself. *See Auburn Hous. Auth.*, 277 F.3d at 143 (citing *Mallard v. United States Dist. Court*, 490 U.S. 296, 300 (1989)). "Well-established principles of construction dictate that statutory analysis necessarily begins with the 'plain meaning' of a law's text and, absent ambiguity, will generally end there." *Collazos v. United States*, 368 F.3d 190, 196 (2d Cir. 2004). "In ascertaining the plain meaning of a statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier*, 486 U.S. 281, 291 (1988). If the meaning of a statute is ambiguous, the court may resort to legislative history to determine the statute's meaning. *See Canada Life Assurance Co. v. Converium Ruckversicherung (Deutschland) AG*, 335 F.3d 52, 57 (2d Cir. 2003); *Auburn Hous. Auth.*, 277 F.3d at 143-44. But in so doing, we must "construct an interpretation that comports with [the

statute's] primary purpose and does not lead to anomalous or unreasonable results." *Connecticut ex rel. Blumenthal v. United States Dep't of the Interior*, 228 F.3d 82, 89 (2d Cir. 2000) (citing *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 71 (1982)).

It has long been a requirement that an applicant for naturalization demonstrate good moral character. *See, e.g., Repouille v. United States*, 165 F.2d 152, 153 (2d Cir. 1948) (construing the phrase "good moral character" in the predecessor to the Immigration and Nationality Act). Prior to 1990, the INA barred aliens convicted of murder from demonstrating good moral character, but allowed aliens convicted of other felonies to attempt to meet that requirement. In 1990, Congress amended the INA to provide that all aliens convicted of any aggravated felony would be statutorily precluded from establishing the necessary good moral character for naturalization. The pertinent naturalization provision now reads: "No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was – one who at any time has been convicted of an aggravated felony (as defined in subsection (a)(43) of this section)." 8 U.S.C. § 1101(f)(8). The 1990 amendments also provided that this change "shall take effect on the date of enactment of this Act and shall apply to convictions occurring on or after such date." Immigration Act of 1990, § 509(b), 104 Stat. at 5051. The date of enactment was November 29, 1990.

In 1996, Congress again amended the INA, for the first time adding to the statute a definition of the word "conviction":

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication has been withheld, where
>
> (i)      a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and

> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A). In passing the statute, Congress made clear that it intended the new definition to apply retroactively. Illegal Immigration Reform and Alien Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, Div. C., Title III-A § 322(c), 110 Stat. 3009-629 (1996) (applying the new definition to "convictions and sentences entered before, on, or after the date of enactment of this Act").

There is no dispute that the crime for which Puello was convicted is an aggravated felony. *See* 8 U.S.C. § 1101(a)(43)(B) (including among the list of aggravated felonies "illicit trafficking in a controlled substance"). Nor is there any allegation that this case is governed by the provision of the definition defining what constitutes a conviction when adjudication has been withheld, which applies to situations where the defendant might mitigate the effects of his conviction through good behavior, successful completion of probation, or the like. Thus, we focus only on the first prong of the definition, "formal judgment of guilt of the alien entered by a court."[1]

We begin, as we must, by examining the language of statute, starting with the common meaning of the words in it. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507

---

[1] At the outset, we note that the Third Circuit has answered this question directly and held that the date of conviction under the statute is the date of either sentencing or entry of judgment on the docket. *See Perez v. Elwood*, 294 F.3d 552, 562 (3d Cir. 2002) (Becker, *C.J.*). Although we have not yet squarely addressed the issue, in other cases interpreting the INA's definition of conviction we have assumed that a "formal judgment of guilt" connotes more than just a guilty plea. *See Abimbola v. Ashcroft*, 378 F.3d 173, 181 (2d Cir. 2004) (holding that an *Alford* plea coupled with a sentence constitutes a conviction under the INA, and noting that "Congress focused the sanction of removal on a criminal conviction as opposed to an admission of guilt"); *Mugalli v. Ashcroft*, 258 F.3d 52, 62 (2d Cir. 2001) (holding in the deportation context that a New York state conviction mitigated by a Certificate of Relief is still a conviction under the INA because the defendant "entered a plea of guilty, and the court entered a formal judgment of guilt").

U.S. 380, 388 (1993) ("Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry their ordinary, contemporary, common meaning.") (internal quotation marks omitted). First, the definition uses the words "formal judgment," the common meaning of which denotes a document signed by the judge and entered on the docket, as in Federal Rule of Criminal Procedure 32(k)(1): "In the judgment of conviction, the court must set forth the plea, the jury verdict or the court's findings, the adjudication and the sentence. . . . The judge must sign the judgment, and the clerk must enter it." *See Perez*, 294 F.3d at 562 (noting that "it makes sense to define 'formal judgment of guilt' by reference to Rule 32[(k)(1)'s] definition of 'judgment of conviction'"). While it is true, as Puello argues, that the language of Rule 32(k)(1) ("judgment of conviction") is slightly different from the language of the INA definition ("formal judgment of guilt"), both terms center on the action the court must take to formalize the judgment. Further, as the district court noted, 418 F. Supp. 2d at 438, in other contexts the Supreme Court and this Court have considered the judgment to occur at the time of sentencing. *See, e.g., Corey v. United States*, 375 U.S. 169, 174 (1963) (noting that "the sentence is the judgment") (internal quotation marks omitted); *United States ex rel. Mignozzi v. Day*, 51 F.2d 1019, 1021 (2d Cir. 1931) (noting that "the only judgment in a criminal case is the sentence"). Puello does not suggest any alternative explanation for why Congress included the word "judgment" in the definition of "conviction," especially with the common understanding of that word as a backdrop.

Additionally, the statutory definition of "conviction" speaks of a judgment "entered by a court," the common understanding of which involves the entry on the docket of the document envisioned in Rule 32(k)(1), and not a guilty plea alone. *See, e.g.,* Fed. R. App. P. 4(b)(1)(A)(i) (noting that "a defendant's notice of appeal must be filed . . . within 10 days after the later of the entry of either the judgment or the order being appealed"); *United States v. Robinson*, 473 F.3d

487, 490 (2d Cir. 2007) (noting the rule that "we ordinarily lack jurisdiction to review decisions before sentencing is complete and a judgment of conviction has been entered"); *United States v. Rodriguez*, 892 F.2d 233, 234 (2d Cir. 1989) (referring to the date of the judgment as the date "[t]he judgment of conviction was actually entered in the criminal docket").

Examination of the overall structure and operation of the statute lends added credence to BCIS's position. *See Auburn Hous. Auth.*, 277 F.3d at 144 ("The meaning of a particular section in a statute can be understood in context with and by reference to the whole statutory scheme, by appreciating how sections relate to one another. In other words, the preferred meaning of a statutory provision is one that is consonant with the rest of the statute."). Construing a guilty plea alone as a "formal judgment of guilt" makes little sense in the context of the definition of "conviction" as a whole. The definition discusses two types of convictions: the first prong addresses cases in which a formal judgment of guilt has been entered, and the second prong addresses cases in which adjudication has been deferred or withheld, but where a plea or verdict of guilt has occurred and punishment has been imposed. To find a "conviction" under the first prong, BCIS assesses only whether there is a "formal judgment of guilt," while under the second prong BCIS must find both (i) a jury verdict, guilty plea, plea of nolo contendere, or admission of facts sufficient to warrant a finding of guilt, *plus* (ii) imposition of punishment. 8 U.S.C. § 1101(a)(48)(A). The first prong stands in relief from the second – a "formal judgment of guilt" is different from a deferred adjudication only at the point of sentencing or entry of judgment. Both procedures may involve the acceptance of a guilty plea. If a guilty plea alone were sufficient to establish a "formal judgment of guilt," then the second prong of the definition would be superfluous; it would never matter if adjudication were deferred because the verdict or entry of the plea would be sufficient to constitute a "conviction." *See Griffiths v. INS*, 243 F.3d 45, 53 (1st Cir. 2001) (holding that a notation of "guilty-filed" on the criminal docket could not

constitute a conviction under the first prong of the INA conviction definition because "a formal judgment of guilt under the first prong of the definition entails a showing of something beyond a simple finding of guilt . . . . Otherwise the reference in the second prong of the statute to deferred adjudications where either a judge or a jury has 'found the alien guilty' would be rendered superfluous."). Puello's reading of the statute would therefore contravene our usual practice of rejecting a reading of a statute that would render a section of it superfluous. *See Tablie v. Gonzales*, 471 F.3d 60, 64 (2d Cir. 2006). "[A] statute must, if reasonably possible, be construed in a way that will give force and effect to each of its provisions rather than render some of them meaningless." *Allen Oil Co., Inc. v. Comm'r of Internal Revenue*, 614 F.2d 336, 339 (2d Cir. 1980).

Furthermore, construing a guilty plea alone to constitute a "conviction" would be a significant departure from normal criminal procedure and would present difficult practical problems applying the statute. The Federal Rules of Criminal Procedure make clear that a guilty plea does not represent a final judgment – rather, acceptance of the plea is a step along the way to a final judgment. Rule 11 contemplates the different posture of proceedings before and after sentencing, as a guilty plea may be withdrawn under some circumstances prior to sentencing, but never afterwards. *Compare* Fed. R. Crim. P. 11(d) ("A defendant may withdraw a plea of guilty or nolo contendere . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal") *with* Fed. R. Crim. P. 11(e) ("After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack."). Puello's interpretation of the statutory definition appears to lead to the bizarre result that a withdrawn guilty plea would still be a "conviction" for immigration purposes, because the "conviction" would be established on the date of the entry of the plea. We reject this reading

-10-

because "[a] statute should be interpreted in a way that avoids absurd results." *See United States v. Dauray*, 215 F.3d 257, 264 (2d Cir. 2000).

In support of his reading of the definition, Puello cites a provision of the United States Sentencing Guidelines dealing with career-offender status stating that the "date a defendant sustained a conviction shall be the date that the guilt of the defendant has been established whether by guilty plea, trial, or plea of nolo contendere." U.S.S.G. § 4B1.2(c). But Puello's citation to the sentencing guidelines does him more harm than good. The language Puello cites from U.S.S.G. § 4B1.2(c) was inserted into that provision to conform with similar language in U.S.S.G. § 4A1.2(a)(4). U.S. Sentencing Guidelines Manual app. C, amend. 461 (1992). Section 4A1.2 deals with how a district court should assess a defendant's prior conduct in determining his criminal history and defines "conviction" to ensure that the district court takes into account conduct for which the defendant has been found guilty but not yet sentenced. As such, the Guidelines Commission made clear that it intended, in this section, that conviction attach to the guilty plea and not the "formal entry of judgment." *See United States v. Driskell*, 277 F.3d 150, 156-57 (2d Cir. 2002).

Looking closely at the "conviction" definition in the INA demonstrates that its purpose is to contrast the run-of-the-mill "formal judgment of guilt" with a vast array of procedures states had devised to mitigate the effects of criminal convictions. As such, defendants found guilty of an aggravated felony and sentenced would be treated uniformly, regardless of whether formal judgment was deferred or vacated. *See, e.g., Saleh v. Gonzales*, 495 F.3d 17, 23 (2d Cir. 2007); *Pinho v. Gonzales*, 432 F.3d 193, 205 (3d Cir. 2005); *Herrera-Inirio v. INS*, 208 F.3d 299, 305 (1st Cir. 2000). Also, because defining a "conviction" as a guilty plea alone would render the second prong of the INA's definition superfluous, we do not need to look to another statute's definition to construe that word's meaning in the INA. As the two texts serve substantially

-11-

different purposes, as evidenced by their contrasting definitions of "conviction," we allow the term to operate differently in different contexts.

Our examination of the language of the definition, in the context of the statute as a whole, leads us to conclude that "conviction" refers to the date on which judgment is entered on the docket, not the date on which a court accepts a guilty plea.

**The Legislative History of the Conviction Definition**

Because we believe the language in the statute is unambiguous, we need not examine legislative history to divine the statute's meaning. *See Wetzler v. FDIC*, 38 F.3d 69, 73 (2d Cir. 1994). But even assuming *arguendo* that the statute were ambiguous, our review of the legislative history demonstrates that it would not support Puello's position that Congress intended a guilty plea alone to constitute a formal judgment of guilt.

Before 1996 there was no statutory definition of the term "conviction" in the INA, and before 1988 the Board of Immigration Appeals (typically dealing with deportation, not naturalization) generally applied state-law definitions of conviction and took the position that if a state vacated or expunged an alien's conviction, the alien was no longer "convicted" under the INA. This resulted in confusion and disuniform results, particularly in the context of the varied approaches states took to ameliorating convictions, such as vacaturs after rehabilitation and deferred adjudications. *See Saleh*, 495 F.3d at 23 (noting that "the BIA acknowledged . . . that its own prior approach was unduly deferential to state definitions of conviction and had thus frustrated congressional intent"); *Herrera-Inirio v. INS*, 208 F.3d 299, 305 (1st Cir. 2000) (noting that the BIA was "[f]rustrated by the crazy quilt of anomalous results that flowed from widely disparate state rehabilitative and diversionary arrangements"). Also, pursuant to a one-sentence Supreme Court opinion, the INS generally regarded convictions as not final until the defendant exhausted or waived all direct appeals. *See Moosa v. INS*, 171 F.3d 994, 1000 n.4 (5th

-12-

Cir. 1999) (citing *Pino v. Landon*, 349 U.S. 901 (1955)); *see also Marino v. INS*, 537 F.2d 686, 691 (2d Cir. 1976) (holding that, at that time, "an alien is not deemed to have been 'convicted' of a crime under the [INA] until . . . direct appellate review of the conviction . . . has been exhausted or waived.") (citations omitted).

As a result, in 1988 the BIA attempted to ensure uniformity of treatment by fashioning a singular definition of "conviction" in *In re Ozkok*, 19 I. & N. Dec. 546 (BIA 1988). In *Ozkok*, the BIA stated that "[a]s in the past, we shall consider a person convicted if the court has adjudicated him guilty or has entered a formal judgment of guilt." *Id.* at 551. The BIA then found that when adjudication is withheld a conviction would occur where (1) a judge or jury found the defendant guilty, or the defendant pleaded guilty or nolo contendere or admitted sufficient facts to warrant a finding of guilt; (2) the judge had ordered some form of punishment; and (3) a judgment or adjudication of guilty could be entered if the defendant violated the terms of his probation or failed to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence of the original charge. *Id.* at 551-52.

Congress, however, felt that the BIA's definition was not broad enough and crafted a new definition of conviction as part of the IIRIRA. *See Saleh*, 495 F.3d at 23; *Francis v. Gonzales*, 442 F.3d 131, 140 (2d Cir. 2006). In that definition, Congress essentially reproduced the *Ozkok* test, but eliminated its third requirement. The Congressional Conference Committee Report accompanying passage of the bill notes Congress's intent to consider aliens "convicted" even in states where "a final judgment of guilt may not be imposed if the alien violates probation until there is an additional proceeding regarding the alien's guilt or innocence." H.R. Conf. Rep. No. 104-828, at 224 (1996). The report continues: "This new provision, by removing the third prong of *Ozkok*, clarifies Congressional intent that even in cases where adjudication is

'deferred,' the original finding or confession of guilt is sufficient to establish a 'conviction' for purposes of the immigration laws." *Id.*

Although Puello has seized on the language quoted above regarding Congress's supposed "focus" on the "original . . . confession of guilt," the report does not address specifically the question involved in this case. The entirety of the commentary on the new definition of conviction focuses on the deferred-adjudication prong; the language regarding "formal judgment of guilt" remains essentially unchanged from the *Ozkok* formulation. IIRIRA did, however, eliminate the requirement that all direct appeals be exhausted or waived before a conviction is considered final under the statute. *See Abiodun v. Gonzales*, 461 F.3d 1210, 1213 (10th Cir. 2006); *Montenegro v. Ashcroft*, 355 F.3d 1035, 1037 (7th Cir. 2004); *Moosa*, 171 F.3d at 1009.

Likewise, in the years since the passage of IIRIRA, most litigation over the definition of "conviction" has involved the definition's deferred-adjudication prong, particularly with respect to how various state schemes to expunge or vacate convictions implicate the statute. Recently, in *Saleh v. Gonzales*, we noted that "the BIA identified two primary aims that it believed Congress sought to accomplish [in crafting a definition of conviction]: to focus the conviction inquiry on the 'original determination of guilt' and to 'implement a uniform federal approach.'" 495 F.3d at 23 (quoting *Matter of Roldan-Santoyo*, 22 I. & N. Dec. 512, 521-22 (BIA 1999)). The BIA has taken the approach that convictions vacated for reasons other than the underlying merits remain convictions for purposes of the immigration laws, but convictions vacated because of substantive or procedural defects do not remain convictions for immigration purposes. *See In re Pickering*, 23 I. & N. Dec. 621, 624 (BIA 2003). In *Saleh*, we found this interpretation of the statute reasonable under *Chevron* analysis, following numerous other circuits that have reached the same conclusion. 495 F.3d at 23; *see also Alim v. Gonzales*, 446 F.3d 1239, 1250 (11th Cir. 2006); *Pinho v. Gonzales*, 432 F.3d 193, 209-10 (3d Cir. 2005); *Cruz-Garcia v. Ashcroft*, 396

-14-

F.3d 1125, 1129 (10th Cir. 2005). Puello argues that if a "conviction" can still exist for immigration purposes, even though it has later been expunged or vacated, the word "conviction" must mean a jury's verdict or the acceptance of a guilty plea without any further action by a court.

In all, Puello's argument amounts to a claim that the legislative history and the government's subsequent interpretation of the "conviction" definition demonstrate that the immigration laws treat an alien as convicted based solely on the finding of guilt, and not what happens afterward. The crucial flaw in Puello's argument, however, is that all of the analysis and cases he cites interpret the second prong of the "conviction" definition, dealing with withheld adjudication. It was in those cases that Congress was so concerned about fixing a date of conviction to ensure uniformity of treatment. And even in those cases, a guilty plea alone does not constitute a "conviction" – the court must impose punishment as well. 8 U.S.C. § 1101(a)(48)(A)(ii). In enacting IIRIRA, Congress had nothing new to say about the standard case in which a court found a defendant guilty, by way of either a verdict or a guilty plea, sentenced him or her, and entered a formal judgment on the docket. In those run-of-the-mill cases, it is clear from the language and operation of the statute that Congress did not intend that a guilty plea alone would constitute a "conviction."

**Retroactivity**

Puello also argues that the application of the INA's definition of "conviction" is impermissibly retroactive, apparently claiming that when he entered his guilty plea he did so with the expectation that he would not be barred from later establishing his good moral character for naturalization.

Puello's claim is without merit because the amendments were not applied retroactively to him. The 1990 amendment to the INA applied to "convictions occurring on or after" the date of

-15-

enactment, November 29, 1990. Immigration Act of 1990, Pub. L. No. 101-649, Title IV, § 509, 104 Stat. 4978, 5051 (Nov. 29, 1990). To the extent Puello claims to have relied on the status quo at the time of his guilty plea, that reliance is misplaced. Because, as discussed above, even at the time of Puello's guilty plea, defendants were not deemed convicted under the INA until sentencing at the earliest, Puello was not convicted of his offense until after passage of the INA amendments. And there is no evidence that Puello's guilty plea was an attempt to finalize his conviction in advance of passage of the 1990 amendments and thus avoid their impact. *See Boatswain v. Gonzales*, 414 F.3d 413, 419 (2d Cir. 2005) (noting that, in evaluating whether a statute operates retroactively, "we look[] for some indication . . . [that] the individual whose settled expectations were in question relied on a potential benefit in structuring his conduct"). Had Puello been troubled by the effects of the passage of the amendment, he could have at least attempted to withdraw his guilty plea, which he did not do.

Moreover, Congress may permissibly apply a statute retroactively if it clearly communicates that intent. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994); *Kai Tung Chan v. Gantner*, 464 F.3d 289, 293 (2d Cir. 2006). When Congress amended the INA, it did so for all individuals convicted of felonious conduct after the effective date of the Act – not only for individuals who commited offensive conduct after the date of enactment of the Act. Given that Congress understood that convictions did not occur until sentencing, this language evinces clear Congressional intent that the amendments apply retroactively to those who had committed aggravated felonies, but had not yet been convicted.

To the extent that Puello bases his argument on the fact that Congress did not define conviction in the INA until 1996, Congress's explicit intent that the definition apply retroactively forecloses that argument. *See* IIRIRA § 322(c), 110 Stat. 3009-629 (1996) (applying the new definition to "convictions and sentences entered before, on, or after the date of

-16-

enactment of this Act"); *Moosa*, 171 F.3d at 1007 ("Congress could not have more clearly expressed this intent than through its statement that § 322(a) was to apply to convictions entered *before* the date of IIRIRA's enactment.") (emphasis in original).

**Rule of Lenity**

As a final alternative, Puello argues that because the statute is ambiguous, we should construe it in his favor under the rule of lenity. The rule of lenity, however, "only comes into play when a court after looking at all aids to legislative meaning can do no more than 'guess as to what Congress intended.'" *United States v. Cullen*, 499 F.3d 157, 164 (2d Cir. 2007) (quoting *Muscarello v. United States*, 524 U.S. 125, 138 (1998)). *See also United States v. Hescorp, Heavy Equip. Sales Corp.*, 801 F.2d 70, 77 (2d Cir. 1986) (noting that the rule of lenity "is a doctrine of last resort, to be used only after the traditional means of interpreting authoritative texts have failed to dispel any ambiguities"). Because we have already determined that the plain meaning of the statute precludes Puello's interpretation, we need not resort to the rule of lenity.

CONCLUSION

In sum, we hold that, under the plain meaning of the definition of "conviction" in 8 U.S.C. § 1101(a)(48)(A), the entry of a "formal judgment of guilt . . . by a court" occurs when judgment is entered on the docket, not when a defendant pleads guilty. We also hold that the 1990 amendments to the INA were not impermissibly applied retroactively to Puello. Therefore, the judgment of the district court is **AFFIRMED**.