**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL ANGELO SAMONTE PLANES,
                             *Petitioner,*

v.

ERIC H. HOLDER Jr., Attorney
General,

                             *Respondent.*

No. 07-70730

Agency No.
A037-329-028

ORDER

Filed June 5, 2012

Before: Harry Pregerson, Consuelo M. Callahan, and
Sandra S. Ikuta, Circuit Judges.

Order;
Concurrence by Judge Ikuta;
Dissent by Judge Reinhardt

---

## ORDER

The panel has voted to deny Petitioner's Petition for Panel Rehearing En Banc. Judges Callahan and Ikuta have voted to deny the en banc petition. Judge Pregerson has voted to grant the en banc petition.

A judge of this court called for this case to be reheard en banc. A vote was taken, and a majority of the active judges of the court did not vote for a rehearing en banc. Fed. R. App. 35(f).

The petition for rehearing en banc is therefore DENIED.

---

IKUTA, Circuit Judge, with whom O'SCANNLAIN, CALLAHAN, and BEA, Circuit Judges, join, concurring in the denial of rehearing en banc:

The dissent from the denial of rehearing en banc neglects a salient point: Every circuit that has given a reasoned opinion on the interpretation of "conviction" in 8 U.S.C. § 1101(a)(48)(A) has reached the same conclusion as the panel does here, namely, that "[t]he term 'conviction' means, with respect to an alien, a formal judgment of guilt of the alien entered by a court," regardless whether appeals have been exhausted or waived. 8 U.S.C. § 1101(a)(48)(A); *see Waugh v. Holder*, 642 F.3d 1279, 1284 (10th Cir. 2011); *Puello v. Bureau of Citizenship & Immigration Servs.*, 511 F.3d 324, 331-32 (2d Cir. 2007); *Montenegro v. Ashcroft*, 355 F.3d 1035, 1037 (7th Cir. 2004) (per curiam); *Moosa v. INS*, 171 F.3d 994, 1009 (5th Cir. 1999); *see also Griffiths v. INS*, 243 F.3d 45, 50-51 (1st Cir. 2001).

Most recently, the Tenth Circuit explained in no uncertain terms that Congress defined "conviction" in § 1101(a)(48)(A) "specifically to supplant a prior BIA interpretation that had required deportation to wait until direct appellate review (though never collateral review) of the conviction was exhausted or waived." *Waugh*, 642 F.3d at 1284 (quoting *United States v. Adame-Orozco*, 607 F.3d 647, 653 (10th Cir.), *cert. denied*, 131 S. Ct. 368 (2010)) (internal quotation marks omitted). "From this," the Tenth Circuit concluded, "it follows that an alien is lawfully deportable as soon as a formal judgment of guilt is entered by a trial court." *Id.* (quoting *Adame-Orozco*, 607 F.3d at 653) (internal quotation marks omitted); *see also United States v. Saenz-Gomez*, 472 F.3d 791, 794 (10th Cir. 2007) (rejecting the argument that Congress intended the definition of "conviction" in § 1101(a)(48)(A) to require exhaustion or waiver of appeals, and instead relying on the literal language to hold that the filing of a written judgment against the petitioner constituted a "conviction" for purposes of the statute).

Other circuits have reached similar conclusions. In *Puello*, the Second Circuit stated: "IIRIRA did, however, eliminate the requirement that all direct appeals be exhausted or waived before a conviction is considered final under the statute." 511 F.3d at 332. This conclusion is directly on point and identical to the panel's conclusion here. Two subsequent unpublished opinions have reiterated this conclusion,[1] and no Second Circuit opinion has disagreed.

In *Montenegro*, the Seventh Circuit stated:

> Before the enactment of IIRIRA, the Supreme Court required that a deportation proceeding be based on a conviction that had sufficient 'finality,' which we interpreted to mean that the alien no longer had any direct appeal pending. *IIRIRA, however, treats an alien as 'convicted' once a court enters a formal judgment of guilt*. IIRIRA eliminated the finality requirement for a conviction . . . . Under IIRIRA, therefore, Montenegro's conviction in April 1996 of an aggravated felony rendered him removable.

*Montenegro*, 355 F.3d at 1037-38 (emphasis added) (internal citations omitted).

---

[1] *See Ramirez v. Holder*, 447 F. App'x 249, 251 n.1 (2d Cir. 2011) (summary order) ("This court has suggested that the definition of 'conviction,' added to the immigration laws in 1996, 'eliminate[d] the requirement that all direct appeals be exhausted or waived before a conviction is considered final under the statute.' Because Ramirez's petition is without merit even under the more favorable definition of conviction applied by the BIA, we need not here decide whether *Puello*'s construction should be followed." (alteration in original) (internal citation omitted) (quoting *Puello*, 511 F.3d at 332)); *Alejo v. Mukasey*, 292 F. App'x 128, 128 (2d Cir. 2008) (summary order) ("As we have explained, in 1996, Congress 'eliminate[d] the requirement that all direct appeals be exhausted or waived before a conviction is considered final.' " (alteration in original) (quoting *Puello*, 511 F.3d at 332)).

In *Moosa*, the Fifth Circuit considered whether Congress intended to retain the "finality requirement" that the BIA had "superimposed" on the definition of "conviction," *Moosa*, 171 F.3d at 1000, and concluded that the finality requirement had been eliminated by the new statutory language of IIRIRA. *Id.* at 1001-02 (quoting the current version of § 1101(a)(48)(A) and concluding that it eliminated the finality requirement).

Unable to cite a single circuit court that has adopted their proposed interpretation, the dissent instead argues that we should ignore the interpretation and reasoning of our sister circuits because the statutory construction issue in those cases arose in different contexts. Dissental at 6284-85 n.4. Each of our sister circuits, however, interpreted the same statutory language as the panel interpreted here. As the Supreme Court unanimously held, the same words in the same statute have the same meaning, regardless of the context. *See Leocal v. Ashcroft*, 543 U.S. 1, 12 n.8 (2004).

Nor does the dissent offer any persuasive justification for rejecting the reasoned decisions of our sister circuits. The dissent relies primarily on a BIA decision issued before Congress enacted the current version of § 1101(a)(48)(A), in which the BIA stated that a conviction is not final "until direct appellate review of the conviction has been exhausted or waived." *See Matter of Ozkok*, 19 I. & N. Dec. 546, 552 n.7 (B.I.A. 1988). According to the dissent, the panel should have followed *Ozkok*, because the *lack* of any express statement in the legislative history that Congress rejected this finality requirement means that the panel should read it into the amended statute. Dissental at 6285-86. The dissent's reliance on Congressional silence to construe a statute is clearly wrong: when the plain language of the statute is clear, it is improper to look for hidden meanings within the legislative history, much less within the silences of the legislative history. *See Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 749 (1989) (rejecting the argument that Congress's *failure* to expressly reject judicial interpretations of an earlier

version of a statute meant that Congress intended to incorporate that interpretation in the amended statute, and noting that "[o]rdinarily, Congress' silence is just that—silence" (quoting *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686 (1987)) (internal quotation marks omitted)).

Moreover, to the extent a court might consider what Congress chose *not* to say, it would have to recognize that when Congress "adopted *almost verbatim* the definition set out by the BIA in *Matter of Ozkok*," dissental at 6285, Congress chose *not* to include the very statement in *Ozkok* on which the dissent relies. Similarly, Congress also decided *not* to include *Ozkok*'s conclusion that a deferred adjudication counts as a "conviction" only if it is not subject to appeal or other proceedings. *See Ozkok*, 19 I. & N. Dec. at 552. In light of these silences, it is most reasonable to infer that Congress intentionally omitted any finality requirement from its definition of "conviction." And even if it was Congress's intent to import the *Ozkok* finality requirement into the statute, there is a straightforward remedy: Congress may revise the plain language of the statute.

Finally, the dissent is mistaken in asserting that the panel erred by failing to remand to the BIA to obtain its interpretation of § 1101(a)(48)(A) first. It is well established that the court, not the BIA, is responsible for statutory interpretation. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984) ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent."); *Federiso v. Holder*, 605 F.3d 695, 697 (9th Cir. 2010) ("Only if we determine that a statute is ambiguous do we defer to the [BIA's] interpretation. We may not accept an interpretation clearly contrary to the plain meaning of a statute's text.") (internal citations omitted). Because the

plain language of § 1101(a)(48)(A) is unambiguous, the panel was correct to address this issue in the first instance.[2]

In sum, the panel decided the issue before it in a manner consistent with the plain language of the statute and with all other circuits that have ruled on the issue. The panel's approach and conclusion were correct, as was the decision of the court not to rehear the case en banc.

---

REINHARDT, Circuit Judge, with whom Chief Judge KOZINSKI and Judges PREGERSON, THOMAS, WARDLAW, W. FLETCHER, and PAEZ join, dissenting from the denial of rehearing en banc:

The three-judge panel in this case decided a question of exceptional importance: whether immigrants in our country, lawful and unlawful, can be deported immediately after a trial court enters a judgment of guilt against them in a criminal case, before they have had the opportunity to obtain appellate review of their convictions. Reasoning, inexplicably, that the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), in enacting the definition of conviction in 8 U.S.C. § 1101(a)(48)(A), eliminated the finality rule which barred deportations pending appellate review, the panel held

---

[2]The dissent's claim that the panel decided this case on a basis not raised by the petitioner is baseless. Planes stated the issue before the court in his opening brief: whether "the BIA erred in determining that petitioner's federal 18 U.S.C. § 1029 offense qualified as a 'conviction' for immigration purposes because he had not yet received any sentence on his crime, thus it did not meet the requirements for a conviction under INA § 101(a)(48)(A)." In direct response to the legal issue before us, we concluded that the BIA did not err in determining that Planes's 2004 conviction was a "conviction" for immigration purposes even though, as the BIA noted, further proceedings were pending. We agreed with the BIA's conclusion that these proceedings (which also included a further right to appeal) did not relate to whether Planes stood convicted of the crime. *In re Planes*, 2007 WL 416855 (B.I.A. Jan. 24, 2007) (unpublished).

that such an unreasonable practice is now lawful. It did so despite the fact that the Board of Immigration Appeals ("BIA") did not mention or consider the issue in its opinion, that the parties did not brief it either before the BIA or before this court, and, most important, that Congress clearly expressed its intent to preserve the longstanding rule that a conviction is not final for immigration purposes until the immigrant has exhausted or waived his direct appeal as of right.

The consequence is that countless immigrants, including lawful permanent residents with young U.S. citizen children and other strong ties to the United States, are subject to imme-diate deportation should a trial court ever enter a judgment of guilt against them. Such a rule deprives immigrants who are deported prior to appellate review of their due process rights when pursuing an appeal, including consulting with their counsel, should they even be able to obtain appellate counsel. In addition, even if their convictions are subsequently over-turned, they remain ineligible to reenter the country without the permission of the Attorney General, and the only recourse available to them is most likely a request to the BIA for *dis-cretionary* reopening of their immigration case, the denial of which the courts are powerless to review.[1] As to immigrants not deported before their direct appeals have been completed,

---

[1] Even if the BIA exercises its discretion and reverses a deportation order, an already deported immigrant may have trouble returning to the United States. Recently, the U.S. Department of Justice admitted that, despite misleading representations made by the government to the Supreme Court in *Nken v. Holder*, there was not, until recently, a written policy to facilitate the return of aliens who had been removed pending judicial review of BIA orders. *See* Letter of April 24, 2012, from Deputy Solicitor General, *Nken v. Holder*, 556 U.S. 418 (2009) (No. 08-681), *available at* http://online.wsj.com/public/resources/documents/return.PDF. The government noted that plaintiffs in a Freedom of Information Act case in district court had submitted declarations showing that they had "en-countered significant impediments in returning" and that these declara-tions "have raised questions about the promptness and consistency with which return has actually been accomplished." *Id.*

the BIA, as a result of the decision we decline to review, may still enter a final order of deportation against them, regardless of the pendency of their appeal. Upon entry of such an order, those immigrants would be stripped of whatever legal status they previously enjoyed, be unable to obtain lawful employment, and be left with only a request to the BIA for discretionary reopening should their convictions be overturned after the expiration of the 90-day period in which to file a timely motion to reopen. Should the BIA refuse to exercise its unreviewable discretion, they will face an order of deportation that can be enforced whenever the Department of Homeland Security ("DHS") decides to deport them.[2]

This is not what the law requires, and not what Congress intended. The panel arrived at its holding only by disregarding Congress' intent and asserting that the language of the statute is clear, all while ignoring (in fact, not even mentioning) the fact that this same language had long been interpreted to include the finality rule. The decision is all the more egregious because the panel expressly reached beyond its review power to adopt a rule providing for such unconscionable treatment to immigrants in our country, including longtime lawful permanent residents with U.S. citizen children. Because this is an issue of exceptional importance that was erroneously reached and wrongly decided, I strongly regret our failure to rehear the case en banc and must respectfully dissent.

---

[2]Even a reversal of an appeal may not be sufficient to persuade the BIA to reopen a case or the DHS to cancel a deportation order. *See, e.g.*, *Matter of Steven*, 2011 WL 1792599 (BIA 2011) (denying motion to reopen after conviction had been vacated because the agency could not determine from the record the reason for vacating the conviction, although the record contained the motion filed by the criminal attorney explaining the reasons seeking to do so); *Matter of Estevez*, 2011 WL 3889669 (BIA 2011) (denying motion to reopen because, although conviction was vacated, the reason could not be discerned from the record); *Matter Gonzalez-Ramirez*, 2010 WL 3355098 (BIA 2010) (same); *Matter of Spencer*, 2009 WL 773245 (BIA 2009) (same).

## I. The BIA Did Not Decide (Or Even Mention), and the Parties Did Not Brief, the Elimination of the Finality Rule

The three-judge panel overstepped its authority and decided the petition for review on a ground not relied upon by the BIA. Nowhere, not even in passing, is the finality rule ever mentioned by the agency. Nor was the issue briefed before the BIA, or the panel, by either party.[3] In ignoring these facts, the panel also ignored the clear mandate from the Supreme Court and our case law that we "must judge the propriety of [agency action] *solely by the grounds invoked by the agency*." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (emphasis added); *see also Hernandez-Cruz v. Holder*, 651 F.3d 1094, 1109-10 (9th Cir. 2011) (noting that we cannot "supply a reasoned basis for the agency's action that the agency itself has not given") (internal quotation marks and citations omitted); *Azanor v. Ashcroft*, 364 F.3d 1013, 1021 (9th Cir. 2004) ("[W]e must decide whether to grant or deny the petition for review *based on the Board's reasoning* rather than our own independent analysis of the record.") (emphasis added); *Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004) (per curiam) ("In reviewing the decision of the BIA, *we consider only the grounds relied upon by that agency*.") (emphasis added); *Navas v. INS*, 217 F.3d 646, 658 n.16 (9th Cir. 2000) ("[T]his court cannot affirm the BIA on a ground upon which it did not rely."); *Martinez-Zelaya v. INS*, 841 F.2d 294, 296 (9th Cir. 1988) ("[O]ur review is confined to the BIA's decision and the bases upon which the BIA relied.").

---

[3]The issue before the BIA was different: whether following an affirmance of the conviction on direct appeal and an *Ameline* remand for resentencing, the direct appeal of the conviction had been exhausted and only a collateral proceeding remained, or whether notwithstanding the affirmance of the conviction a direct appeal still remained pending a further review of the sentence. Implicit in both parties' positions was the assumption that the finality rule remained unchanged.

Dispositively, the only time since the enactment of the IIRIRA that the BIA actually considered the question of the finality rule, it did so en banc in a case two years *after* it decided the appeal in the petition now before us. In that case, *Matter of Abreu*, the BIA ultimately determined that it was not necessary to rule on the issue. 24 I. & N. Dec. 795, 798 (BIA 2009), vacated by *Abreu v. Holder*, 378 F. App'x 59 (2d Cir. 2010). Nevertheless, seven out of fourteen members of the en banc BIA court would have explicitly held that in enacting IIRIRA Congress did not eliminate the finality rule for direct appeals as of right, *id.* at 802-03, 811-21, five other members recognized the argument as a "forceful" one, *id.* at 798, and only two members would have held that the finality rule was eliminated for such appeals, *id.* at 803-11. Since then, the BIA has continued to apply the finality rule to direct appeals as of right in unpublished decisions, recognizing that a "conviction [becomes] final for immigration purposes when the [alien] failed to appeal his conviction, allowed the appeal period to lapse, waived his right to a direct appeal, or exhausted the direct appeal of his conviction." *Matter of McLarty*, 2011 WL 2607064 (BIA 2011); *see also Matter of Evans*, 2012 WL 177335 (BIA 2012); *Matter of Guevara-Medina*, 2011 WL 6962795 (BIA 2011).

## II.   IIRIRA Did Not Eliminate the Finality Rule

Not only did the panel overstep its authority and rule on a ground not relied upon by the BIA; it is also wrong on the merits.[4]

---

[4]Although the panel purports to "join the well-reasoned opinions of the Second, Fifth, Seventh, and Tenth Circuits," each of the cases cited by the panel is distinguishable, and only the one decided by the Tenth Circuit purports to hold that a petitioner is not entitled to a direct appeal as of right prior to being deported. The statement regarding the finality rule in *Puello v. Bureau of Citizenship & Immigration Services*, 511 F.3d 324 (2d Cir. 2007), was dicta, as later recognized by the Second Circuit itself. *See, e.g.*, *Ramirez v. Holder*, 447 F. App'x 249 (2d Cir. 2011). In fact, in *Abreu v. Holder*, 378 F. App'x 59 (2d Cir. 2010), decided two years after *Puello*, the Second Circuit remanded the case to the BIA for determination of this

Up until this decision by the panel, the rule had long been that a conviction is not final for immigration purposes until the defendant has exhausted or waived his direct appeal as of right. *See Matter of Ozkok*, 19 I. & N. Dec. 546, 551-52 n.7 (BIA 1988). In *Matter of Ozkok*, the BIA held that a conviction existed for immigration purposes "if the court has adjudicated [the immigrant] guilty or has entered a formal judgment of guilt," stating that "[i]t is well established that a conviction does not attain a sufficient degree of finality for immigration purposes until direct appellate review of the conviction has been exhausted or waived." *Id.* at 551 & 552 n.7. Congress, in enacting the definition of conviction in 8 U.S.C. § 1101(a)(48)(A), adopted *almost verbatim* the definition set out by the BIA in *Matter of Ozkok*, defining a conviction as "a formal judgment of guilt of the alien entered by a court." Nothing in IIRIRA or its legislative history suggests that Congress intended the phrase "formal judgment of guilt" to be interpreted any differently from how it always had been interpreted prior to the enactment of the statute. Certainly, nothing suggests that Congress intended to eliminate the longstanding finality rule that provided for exhaustion of direct appeals as of right before a conviction became final for immigration purposes. In fact, by adopting almost verbatim the definition

---

very question in the first instance. The Fifth Circuit in *Moosa v. INS*, 171 F.3d 994 (5th Cir. 1999), held only that the finality rule had been eliminated as to *deferred adjudications*, which, as explained *infra* at pages 6286-87, all agree was the intent of Congress. *Moosa* unquestionably did *not* deal with direct appeals as of right. In the Seventh Circuit, *Montenegro v. Ashcroft*, 355 F.3d 1035 (7th Cir. 2004) (per curiam), involved a petition for certiorari to the Supreme Court and a collateral attack on a conviction, neither of which is a direct appeal as of right and neither of which affected the finality of a conviction for immigration purposes even under pre-IIRIRA case law. Finally, the Tenth Circuit case, *United States v. Saenz–Gomez*, 472 F.3d 791 (10th Cir. 2007), was decided in the context of a subsequent criminal reentry proceeding, not in an immigration proceeding deciding whether an alien can be deported immediately after the trial court enters a judgment against him, regardless of whether a direct appeal is pending.

from *Matter of Ozkok*, Congress expressed its intent to preserve the longstanding requirement of finality for direct appeals as of right. "When the words of the Court are used in a later statute governing the same subject matter, it is respectful of Congress and of the Court's own processes to give the words the same meaning in the absence of specific direction to the contrary." *Williams v. Taylor*, 529 U.S. 420, 434 (2000); *see also Alaska v. Native Village of Venetie Tribal Gov't*, 522 U.S. 520, 530-31 (1998) (finding that Congress incorporated requirements for a finding of a "dependent Indian community" set out in previous case law where the text of the subsequent statute "is taken virtually verbatim" from the precedent and the Historical and Revision Notes to the statute indicated an intent to codify the precedent).

In contrast, in IIRIRA, Congress did eliminate the finality requirement for convictions as to which there is no entitlement to an immediate direct appeal. Such convictions are known as *deferred adjudications*. The BIA in *Matter of Ozkok* held that, for immigration purposes, a deferred adjudication would be considered a conviction if three elements were met, the third of which consisted of a finality requirement.[5] Congress adopted, again almost verbatim, that definition from *Matter of Ozkok*, except that it omitted the third element, thereby eliminating the finality requirement as to *deferred* adjudications, and thus provided that a conviction exists for

---

[5]*Matter of Ozkok* defined a conviction in the deferred adjudication context as follows: "Where adjudication of guilt has been withheld," if

> (1) a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilty; (2) the judge has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed . . . ; and (3) a judgment or adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence of the original charge.

19 I. & N. Dec. at 551-52.

immigration purposes once there is a finding of guilt and the imposition of punishment in such proceedings. *See* 8 U.S.C. § 1101(a)(48)(A). The elimination of the finality provision for deferred adjudications, along with the failure to make any change in the language regarding direct appeals as of right, further demonstrates Congress' intent to retain the finality rule for the latter category of appeals.

The panel completely disregarded this history. It relied on the supposed "plain language of the statute," without acknowledging that this same language had long been interpreted for purposes of immigration law to include the finality rule. It ignored the clear intent of Congress in taking the language from *Matter of Ozkok* and codifying it in the statutory definition of conviction with respect to cases including direct appeals as of right—and it ignored the fact that Congress, in that same statute, omitted the finality requirement for a different category of cases, deferred adjudications. The panel also ignored the fact that, when the BIA, the agency charged with interpreting the statute, considered the matter en banc, it held that it need not reach the issue, although seven out of its fourteen members would have held that Congress intended to preserve the finality rule, *Matter of Abreu*, 24 I. & N. Dec. at 802-03, 811-21, five other members recognized this argument as a "forceful" one, *id.* at 798, and only two members out of fourteen would have held, as the three-judge panel did here, that Congress eliminated the finality rule for direct appeals as of right, *id.* at 803-11. I believe that the majority of the BIA had it right, and that it would hold, if allowed to decide the case here, that the finality rule still applies to direct appeals as of right.

At the very least, this court, like the Second Circuit, should have returned the case to the BIA so that it could decide in a published opinion the important issue that the Second Circuit has already asked it to decide (*see Abreu v. Holder*, 378 F. App'x 59): the continued applicability of the finality rule to direct appeals as of right, which the BIA has overwhelmingly

recognized in unpublished opinions in a manner directly contrary to what the three-judge panel holds here. Rather than bypassing the BIA and deciding the question ourselves, if we think that the issue must now be decided, we should have afforded the BIA the opportunity to do so in a formal published opinion of the Board.

* * *

In sum, the panel exceeded its authority in deciding the petition for review on the ground that IIRIRA eliminated the finality rule for direct appeals as of right. That is not what the BIA decided; instead, the BIA simply characterized the pending proceedings in Planes' case as "collateral proceedings" affecting only his sentence. The panel also got the case wrong on the merits. By adopting almost verbatim the definition of conviction from *Matter of Ozkok*, Congress expressed its intent to preserve the longstanding finality rule. It is regrettable that our court has refused to rehear this case en banc to correct the overreaching and misguided holding by the three-judge panel. One can only hope that others will not make that same error.

I dissent.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON REUTERS—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2012 Thomson Reuters.