09-2249-ag(L), 09-2591-ag(XAP), 09-2885-ag(XAP)
National Labor Relations Board v. Matros Automated Electrical Construction Corp.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 11ᵗʰ day of February, two thousand ten.

Present:
        GUIDO CALABRESI,
        ROBERT A. KATZMANN,
                *Circuit Judges*,
        DENNY CHIN,
                *District Judge*.[*]

_____

NATIONAL LABOR RELATIONS BOARD,

        *Petitioner-Cross-Respondent*,

        v.                                    Nos. 09-2249-ag(L), 09-2591-ag(XAP),
                                              09-2885-ag(XAP)

MATROS AUTOMATED ELECTRICAL CONSTRUCTION CORP., and BTZ ELECTRICAL CORP., Single Employers; LOCAL 363, UNITED ELECTRICAL WORKERS OF AMERICA, IUJHAT,

        *Respondents-Cross-Petitioners*.

_____

        [*] The Honorable Denny Chin, United States District Judge for the Southern District of New York, sitting by designation.

For Petitioner-Cross-Respondent
National Labor Relations Board:

JILL A. GRIFFIN, Supervisory Attorney (Usha
Dheenan, Attorney, Ronald Meisburg, General
Counsel, John E. Higgins, Jr., Deputy General
Counsel, John H. Ferguson, Associate General
Counsel, Linda Dreeben, Deputy Associate General
Counsel, *of counsel*), National Labor Relations
Board, Washington, DC

For Respondent-Cross-Petitioner
Matros Automated Electrical
Construction Corp.:

MICHAEL J. MAURO (Richard Milman, *of counsel*),
Milman Labuda Law Group PLLC, Lake Success,
NY

For Respondent-Cross-Petitioner
Local 363, United Electrical Workers
of America, IUJHAT:

RICHARD M. GREENSPAN, Ardsley, NY

Application to enforce the order of the National Labor Relations Board and cross-petitions for review.

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the application for enforcement is **GRANTED** and the cross-petitions for review are **DENIED**.

The National Labor Relations Board ("NLRB" or the "Board") applies to this Court for enforcement of its Decision and Order dated December 8, 2008, and Matros Automated Electrical Construction Corp. ("Matros") and Local 363, United Electrical Workers of America, IUJHAT ("Local 363") cross-petition for review. We assume the parties' familiarity with the facts, procedural history, and specification of issues on appeal.

Matros challenges the Board's finding that it committed unfair labor practices in violation of §§ 8(a)(3) and 8(a)(1) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 158(a)(3) and 158(a)(1), when it discharged Aparicio Garay, laid off and then did not call back to work

Jareslaw Wencewicz, and denied wage increases to Wencewicz, Joseph Hodge, and Gilberto Gonzalez.[1] In determining whether § 8(a)(3) has been violated, the Board employs a burden-shifting framework. First, the General Counsel of the NLRB must demonstrate that 1) the employee was engaged in protected activity, 2) the employer was aware of this activity, and 3) the employee's protected union activity was a substantial or motivating factor behind the employer's decision to take the adverse employment action. *Golden State Foods Corp.*, 340 N.L.R.B. 382, 385 (2003). *See also NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 400 (1983), *abrogated on other grounds by Dir., Office of Workers' Comp. Programs v. Greenwich Collieries*, 512 U.S. 267 (1994). The burden then shifts to the employer, who may show, as an affirmative defense, that the adverse action would have occurred "in any event and for valid reasons." *Transp. Mgmt.*, 462 U.S. at 400. (This analysis is known as the "*Wright Line* analysis," named after the NLRB decision that first set it forth, *Wright Line*, 251 N.L.R.B. 1083 (1980).) If the employer's proffered reason for the adverse employment action is shown to be pretextual, then the employer will be found not to have carried its burden. *NLRB v. S. E. Nichols, Inc.*, 862 F.2d 952, 957 (2d Cir. 1988).

With regard to all of the unfair labor practices at issue here, the Board affirmed the ALJ's findings that, at the second stage of the *Wright Line* analysis, Matros failed to carry its burden

[1] Section 8(a)(3) of the NLRA provides that it is an unfair labor practice for an employer "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3). Section 8(a)(1) of the NLRA provides that it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of" their collective bargaining rights. 29 U.S.C. § 158(a)(1). A violation of § 8(a)(3) of the NLRA constitutes a "derivative violation" of § 8(a)(1) when the employer's action had the effect of discouraging union membership or activities. *Office & Prof'l Employees Int'l Union, AFL-CIO, CLC v. NLRB*, 981 F.2d 76, 81 n.4 (2d Cir. 1992).

because its proffered reasons for taking the adverse employment actions were pretextual. Matros challenges the evidentiary basis of these findings of fact. The factual findings of the NLRB "if supported by substantial evidence on the record considered as a whole shall . . . be conclusive." 29 U.S.C. § 160(f). *See also NLRB v. G&T Terminal Packaging Co., Inc.*, 246 F.3d 103, 114 (2d Cir. 2001); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487-91 (1951). Our review is particularly deferential here, as Matros acknowledges, because in each case the crux of the ALJ's factual determination was his finding that the testimony offered by Matros to explain its actions was not credible. The credibility determinations of the ALJ, when adopted by the NLRB, "may not be disturbed unless incredible or flatly contradicted by undisputed documentary evidence." *NLRB v. Katz's Delicatessen of Houston Street, Inc.*, 80 F.3d 755, 763 (2d Cir. 1996). In particular, when an ALJ's credibility determination that the NLRB has accepted is "based directly upon the bearing and delivery of witnesses who orally testified before him," we may not upset it unless the testimony "on its face . . . is hopelessly incredible or flatly contradicts either a so-called 'law of nature' or undisputed documentary testimony." *NLRB v. Dinion Coil Co.*, 201 F.2d 484, 490 (2d Cir. 1952) (citations and internal quotation marks omitted).

None of the ALJ's credibility findings is flatly contradicted by the record. With regard to Garay's discharge, Matros owner Stuart Moskowitz and Matros supervisor John Mata testified that he was discharged for twice calling Mata a "rat." According to the testimony of Moskowitz and Mata, both of these incidents occurred in September-October of 2004 — in other words, shortly before Garay's discharge at the end of October. Matros also pointed to documents prepared by Mata and Moskowitz stating, respectively, that the second incident occurred on October 25, 2004, and that the "rat" incidents occurred in the weeks preceding Garay's

termination and were the reason for his termination. The timeline provided by Garay, however, undercuts Matros's claim that the "rat" incidents were the cause of his discharge. Garay testified that the first of these incidents took place in July 2004, and the second on September 22, 2004, over one month before Garay's discharge, a date he stated that he remembers because he had just returned to New York after visiting Panama in the wake of his father's death. The ALJ credited Garay's testimony over the testimony and documents provided by Moskowitz and Mata, and the Board adopted his determination. Matros challenges this credibility finding.

The record overall supports the ALJ's finding that Moskowitz, in particular, was not a credible witness. On more than one occasion, Moskowitz's testimony was flatly contradicted by the evidence, including 1) when he stated that he was not aware of any organizing activity by Local 3 of the International Brotherhood of Electrical Workers ("Local 3") until it filed its election petition in April 2004, while the record shows that he sent a letter to Matros employees concerning Local 3's organizing efforts in March of that year, and 2) when he stated that he followed his lawyer's advice and refrained from interrogating, threatening, or bribing his employees in connection with the Local 3 election, while the Board found, and he now does not dispute, that he committed several such unfair labor practices in the runup to the election. Moreover, the credibility of the document prepared by Moskowitz for New York State unemployment authorities is undermined by the fact that while it states that Garay received numerous warnings before his discharge, the record contains no evidence of any such warning (while other employees did receive written warnings for comparable misconduct). Garay's testimony, meanwhile, was not "hopelessly incredible." Accordingly, we see no reason to disturb the Board's finding that Moskowitz was not credible and that Garay was discharged in response

5

to his union activities.

With regard to the layoff of Wencewicz, the ALJ similarly credited the account of the employee over the account offered by Matros. The parties agree that in January 2005, Wencewicz was laid off, and that in March 2005, the company asked him to come back to work. The record shows that Wencewicz filed an unfair labor practice charge with the NLRB in February 2005. The parties debate whether Wencewicz was laid off because business had slowed down or whether he was laid off on a pretense of slow business, and then frozen out by the company, all because of his union activities, and only eventually asked back to work after he had filed his unfair labor practice charge. Moskowitz and Joe Estimable, another Matros supervisor, testified that soon after the initial January 2005 layoff, Estimable called Wencewicz and asked him to come back to work, and Wencewicz refused. Wencewicz, in contrast, testified that he returned to work several days after he was first laid off but that he was told by Estimable that there was no work for him and he should stay away until called by Matros. Again, the Board adopted the ALJ's finding that Wencewicz was more credible than Moskowitz and Estimable. Even were we to ignore the various indicia that Moskowitz was an unreliable witness — which we are not inclined to do — "[w]e may not 'displace the Board's choice between two fairly conflicting views'" of the evidence in the record. *G&T Terminal Packaging*, 246 F.3d at 114 (citing *Universal Camera*, 340 U.S. at 488) (alterations omitted).

Lastly, Matros's challenge to the Board's finding that the company denied wage increases to certain employees because of their union activities once again rests on its disagreement with the ALJ's credibility finding. It is undisputed that in November 2004, Wencewicz, Gonzalez, and Hodge were three of only five Matros employees (out of a total of approximately 30) not to

6

receive raises. In January, March, and June 2005, all employees received raises except for Hodge and Gonzalez. (Wencewicz was no longer working at Matros at this time.) Moskowitz testified that these three employees were denied raises because Hodge was a slow and shoddy worker, Gonzalez spoke poor English and Moskowitz wished to motivate him to attend school, and Wencewicz spoke poor English and was a substandard worker. The ALJ, however, did not credit this testimony, and the Board affirmed this finding. Again, we note that the record indicates that Moskowitz's testimony was generally not credible. Moreover, on the specific subject of the wage increases Moskowitz elsewhere claimed that, due to increased costs, he "had to really be very selective in who [he] decided to give raises to." App. 460. This testimony is belied by the fact that he gave raises to the vast majority of Matros employees. Under these circumstances, we once again see no reason to disturb the Board's adverse credibility finding.

Local 363, for its part, challenges the Board's finding that it violated § 8(b)(1)(A) of the NLRA, 29 U.S.C. § 158(b)(1)(A), by accepting recognition from Matros while Local 3's challenge to the results of the May 2004 election was still pending. In *Abraham Grossman d/b/a Bruckner Nursing Home*, 262 N.L.R.B. 955, 957 (1982) ("*Bruckner Nursing Home*"), the NLRB held that in order to fulfill the requirement of "employer neutrality" established by § 8(a)(2) of the NLRA, 29 U.S.C. § 158(a)(2), an employer may not recognize one union when a representation petition concerning another union has been filed with the Board. As restated in *Wackenhut Corp.*, 287 N.L.R.B. 374, 375 (1987), the *Bruckner Nursing Home* rule is that "employers are prohibited from recognizing any competing unions for the limited period during which a representation petition is in process." This rule also prohibits a union from accepting recognition while a representation petition is in process. *See Katz's Delicatessen*, 80 F.3d 755,

768-69 (finding that a union had violated the *Bruckner* rule by accepting recognition while its own election petition was pending).

Local 363 argues, in essence, that the *Bruckner* rule is unreasonable as applied in this case because more than five years have passed since Local 3 filed its objections to the May 2004 election. Local 363 claims that Matros employees are being denied their free choice in union representation because their chosen bargaining representative is barred from taking any action on their behalf. In general, we afford substantial deference to the NLRB's construction of the NLRA when it "constitute[s] a reasonable reading of the statute." *Civil Serv. Employees Ass'n, Local 1000, AFSCME v. NLRB*, 569 F.3d 88, 91 (2d Cir. 2009). The Board, in *Bruckner*, explicitly considered the possibility of a minority union forestalling an employer's recognition of a union that has majority support, and it adopted the present rule in order to strike an appropriate balance between preventing employers from unfairly favoring one union over another and encouraging collective bargaining. 262 N.L.R.B. at 957-58. We have previously applied the *Bruckner* rule, *see Katz's Delicatessen*, 80 F.3d at 768, and Local 363 has not persuaded us to now declare it an unreasonable interpretation of the statute. There is no indication in the record before us that Local 3 has improperly delayed its challenge to the May 2004 election before the Board, and we do not believe that the Matros employees' free choice would be honored by allowing Matros to recognize Local 363 when the Board found that the election that Local 3 lost was marred by unfair labor practices. *See Haddon House Food Prods., Inc. v. NLRB*, 764 F.2d 182, 187 (3d Cir. 1985) ("The *Bruckner* rule is a satisfactory accommodation of the sometimes conflicting policies of prompt recognition of majority collective bargaining representatives and of uncoerced free choice in the selection of such representatives.").

8

We have considered Matros's and Local 363's other arguments and find them to be without merit.  For the foregoing reasons, we **GRANT** the Board's application for enforcement and **DENY** the cross-petitions for review.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

9