FILED
United States Court of Appeals
Tenth Circuit

June 4, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JUAN F. ADAME-OROZCO,

    Defendant-Appellant.

No. 09-3296

---

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 6:09-CR-10046-WEB-1)**

---

John K. Henderson, Jr., Assistant Federal Public Defender, Wichita, Kansas, for
Defendant-Appellant Juan Adame-Orozco.

Brett I. Anderson, Assistant United States Attorney (Lanny D. Welch, United
States Attorney, with him on the brief), Wichita, Kansas, for Plaintiff-Appellee
United States of America.

---

Before **HARTZ, BALDOCK,** and **GORSUCH,** Circuit Judges.

---

**GORSUCH,** Circuit Judge.

---

Juan Adame-Orozco appeals his conviction for illegally reentering the

United States after a prior deportation.  The conviction should be overturned, he

submits, because the order that resulted in his deportation from the country was

itself invalid. And this is so, in his view, because the order was premised on state court felony drug convictions that he didn't have a sufficient opportunity to attack in collateral proceedings before he was removed from the country. In pursuing this line of argument, Mr. Adame-Orozco seeks to rely on 8 U.S.C. § 1326(d), which provides a defendant in an illegal reentry case with a means of defense if he can show, among other things, that the underlying "deportation proceedings at which [his deportation] order was issued improperly deprived [him] of the opportunity of judicial review." *Id.* § 1326(d)(2).

The problem is that Mr. Adame-Orozco was never improperly deprived of the opportunity for judicial review in his federal deportation proceedings. He was able to, and did, appeal his deportation order to the Board of Immigration Appeals ("BIA"). And he was free, in turn, to appeal the BIA's ruling to a federal court. Section 1326(d) requires no more. Contrary to Mr. Adame-Orozco's argument, the statute doesn't guarantee judicial review in state court of his underlying state felony convictions. Neither does it require, as he suggests, a stay of federal deportation proceedings so long as some appellate or collateral review of his state felony convictions happens to be ongoing. The plain language and history of § 1326(d) preclude such a view and require us to affirm the judgment of the district court.

I

In approaching Mr. Adame-Orozco's appeal, we begin with the facts

underlying his original deportation (Section I.A), and those more immediately

relevant to his current illegal reentry prosecution (Section I.B), before proceeding

to analyze the arguments he presents for our review (Section II).

A

Sometime in the 1980s, Mr. Adame-Orozco entered the United States

without an inspection by or approval from federal immigration officials.  By

1990, however, Mr. Adame-Orozco had won lawful permanent resident status, and

he eventually settled in Kansas.  While in this country, he amassed convictions

for "numerous" crimes.  *See* Criminal Complaint, R. Vol. I at 9.  Most pertinent

for our purposes, in April 2005 Mr. Adame-Orozco added to this record by

pleading guilty in Kansas state court to two counts of selling cocaine in violation

of state law.

When federal officials received word of these latest convictions, they

initiated deportation proceedings.[1]  In their view, Mr. Adame-Orozco's

---

[1] We recognize that the Illegal Immigration Reform and Responsibility Act of 1996 replaced "deportation" with "removal" as the preferred term of art to refer to the denial or revocation of admission to the United States. *See Zhong v. U.S. Dep't of Justice*, 480 F.3d 104, 108 n.3 (2d Cir. 2007).  We use the term "deportation" in this opinion, however, to track the language of 8 U.S.C. § 1326, the statute that's the primary focus of our attention here.  Courts throughout the nation often use the terms "removal" and "deportation" interchangeably, *see, e.g.*, *Zhong*, 480 F.3d at 108 n.3, and we don't mean to suggest any substantive

(continued...)

convictions constituted "aggravated felonies" sufficient to warrant deportation under 8 U.S.C. §§ 1227(a)(2)(A)(iii) & 1101(a)(43)(B).[2] On January 18, 2006, Mr. Adame-Orozco appeared before an immigration judge ("IJ"). Because the IJ agreed that the convictions involved "aggravated felonies," he explained that he didn't have any discretion to allow Mr. Adame-Orozco to remain in the United States. The IJ informed Mr. Adame-Orozco that perhaps his best hope for staying in the country was if he could convince a state court to undo his guilty plea to the cocaine charges. Though the IJ seemingly had no obligation to do so, he granted a one-month continuance to afford Mr. Adame-Orozco a chance to pursue relief in state court.

By the time the deportation proceedings reconvened on February 22, however, little had changed. Mr. Adame-Orozco hadn't taken any steps to reopen his state court conviction until that same day, when he finally filed a motion before the state trial court to withdraw his guilty plea. In those papers, Mr. Adame-Orozco argued that his guilty plea was involuntary and invalid because,

---

[1](...continued)
difference between them for purposes of § 1326. *See United States v. Pena-Renovato*, 168 F.3d 163, 165 (5th Cir. 1999) ("[R]emoval and deportation are the same proceeding for purposes of § 1326 . . . .").

[2] Section 1227(a)(2)(A)(iii) provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." Section 1101(a)(43)(b) defines the term "aggravated felony" to include "illicit trafficking in a controlled substance (as defined in section 802 of title 21), including a drug trafficking crime (as defined in section 924(c) of title 18)." Mr. Adame-Orozco concedes that he qualifies as an "alien" for the purposes of § 1227.

- 4 -

among other things, his lawyer had rendered constitutionally ineffective assistance by failing to advise him of the immigration consequences associated with being convicted of the charges against him. Unsurprisingly, the state trial court hadn't yet ruled on Mr. Adame-Orozco's motion.

Before the IJ on February 22, Mr. Adame-Orozco's immigration lawyer didn't dispute that his drug convictions constituted "aggravated felonies" for purpose of the immigration laws. Instead, counsel argued against deportation by parroting Mr. Adame-Orozco's state court request for collateral relief, submitting that the state court guilty plea was invalid by dint of the ineffective assistance provided by trial counsel in the criminal proceedings.

To this, the IJ replied that "post-conviction relief is collateral to a removal hearing." R. Vol. I at 72. Unless and until Mr. Adame-Orozco's state court convictions were undone by authorized state courts, he explained, deportation proceedings could and would continue. At the hearing's end, the IJ found that Mr. Adame-Orozco was, in fact, subject to deportation by virtue of his still-operative state convictions. The IJ then advised Mr. Adame-Orozco that he could appeal this deportation order to the BIA, and that any deportation wouldn't happen until the BIA ruled. In the meantime, the IJ offered, Mr. Adame-Orozco might continue to pursue his collateral effort in state court to undo his convictions.

The BIA and the Kansas state trial court issued their rulings on the same day approximately three months later. The BIA denied Mr. Adame-Orozco's immigration appeal, finding no defect in the IJ's deportation order. And the state trial court denied Mr. Adame-Orozco's motion to withdraw his state court guilty plea. The state court held that Mr. Adame-Orozco knowingly and voluntarily entered his guilty plea, and that Kansas law didn't require trial counsel to inform a criminal defendant of the potential immigration consequences of a guilty plea.[3]

Mr. Adame-Orozco was deported on June 3, 2006 and didn't choose to pursue an appeal of the BIA's decision in federal court. Ten days after his deportation, however, on June 13, 2006, Mr. Adame-Orozco did file a notice of appeal in state court announcing his intention to challenge that court's rejection of his collateral attack on his drug convictions. After that filing, though, Mr. Adame-Orozco apparently allowed his appeal to fall dormant.

---

[3] In reaching this latter holding, the trial court relied on the Kansas Supreme Court's decision in *State v. Muriithi*, 46 P.3d 1145 (Kan. 2002). More recently, though, the United States Supreme Court has held that an attorney's failure to advise a non-citizen defendant of the immigration consequences of pleading guilty to a crime can, in certain circumstances, constitute ineffective assistance of counsel under the Sixth Amendment. *See Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-84 (2010). This case doesn't call upon us to apply or interpret *Padilla*, however. Mr. Adame-Orozco appeals only a question about § 1326(d)'s meaning, not *Padilla*'s import. As we explain below, we hold that § 1326(d) permits a court in an illegal reentry case to reexamine the validity of the alien's deportation proceedings — just not a conviction that might've led to those proceedings. Nothing in this holding precludes Mr. Adame-Orozco from attempting a collateral attack on his underlying state convictions using *Padilla* (or any other line of argument) in some other, appropriate venue.

B

So things went until April 2009 when federal authorities discovered Mr. Adame-Orozco again living in Kansas. Another indictment followed, this time charging Mr. Adame-Orozco with illegally reentering the country subsequent to a conviction for an aggravated felony. *See* 8 U.S.C. §§ 1326(a) and 1326(b)(2).

Mr. Adame-Orozco replied with a motion to dismiss the indictment. Once again, he did not dispute that his Kansas drug convictions qualified as "aggravated felonies" for purposes of the immigration laws. Rather, he argued that the earlier deportation proceedings against him were deficient under 8 U.S.C. § 1326(d)(2) because they didn't afford him sufficient time before deportation to pursue his collateral attack on those felony convictions in state court.

After the federal district court considered and eventually denied the motion, Mr. Adame-Orozco pled guilty and was sentenced to 15 months in prison. In doing so, though, he reserved his right to appeal the denial of his motion to dismiss, a right he now pursues before us. At the same time, Mr. Adame-Orozco sought to breathe new life into his state court appeal challenging the validity of his state guilty plea. In late 2009, he filed a motion to reopen the appeal and, as best we can tell from the materials submitted to us, that appeal is under consideration by the Kansas court of appeals.[4]

---

[4] To provide details about his ongoing state court efforts, Mr. Adame-Orozco has twice moved to supplement the record in this appeal. We grant the

(continued...)

II

A prosecution for illegal reentry under § 1326(a) generally requires the government to prove two things: (1) that the alien "has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding"; and (2) that the alien thereafter has "enter[ed], attempt[ed] to enter, or is at any time found in, the United States."[5] In turn, § 1326(b)(2) provides that those convicted under § 1326(a) "whose removal was subsequent to a conviction for commission of an aggravated felony" may receive a higher sentence.[6]

In seeking to satisfy the first element of § 1326(a), the government may, as it did here, produce evidence that the alien was deported while a deportation order

_____

[4](...continued)
motions.

[5] Certain exceptions to this rule, not pertinent to our case, can be found in § 1326(a)(2).

[6] In *Almendarez-Torres v. United States*, 523 U.S. 224, 235 (1998), the Supreme Court held that § 1326(b)(2), rather than constituting a distinct element or separate offense the jury must find, supplies the district judge with a potential sentencing enhancement to a § 1326(a) conviction. Whether and to what degree *Almendarez-Torres* remains good law after *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and their progeny is not before us. *Cf. Shepard v. United States*, 544 U.S. 13, 27 (2005) (Thomas, J., concurring in part and concurring in the judgment) (suggesting that *Almendarez-Torres* "has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that [it] was wrongly decided"). Mr. Adame-Orozco has never raised that question in this case; to the contrary, he has conceded throughout all the relevant proceedings that his state court convictions satisfy § 1326(b)(2)'s requirements.

was outstanding against him. But what if the defendant-alien seeks to argue that the deportation order was itself unlawful? May he do so in defense of an illegal reentry charge, essentially launching a collateral attack on an earlier deportation proceeding long after the time for appealing that order has passed and the order has become final?

Section 1326(d) addresses these questions. It permits the defendant-alien the chance to mount a collateral attack against a prior deportation order in response to an illegal reentry prosecution — but only in certain circumstances. A defendant-alien may challenge the legality of a deportation order if, but only if, he can show that:

> (1)    the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2)    the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3)    the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d); *see also United States v. Rivera-Nevarez*, 418 F.3d 1104, 1107-08 (10th Cir. 2005). Because a final deportation order enjoys a presumption of regularity, once the government shows that the alien was deported while such an order was outstanding, the burden shifts to the defendant-alien, and it is he who must prove each of § 1326(d)'s elements to overcome the presumed legality

- 9 -

of the earlier deportation order. *See United States v. Arevalo-Tavares*, 210 F.3d 1198, 1200 (10th Cir. 2000) (per curiam).

Mr. Adame-Orozco suggests to us, as he did to the district court, that he can meet this burden. He maintains that he exhausted all administrative relief available to him before the IJ and BIA. *See* 8 U.S.C. § 1326(d)(1). He submits that his deportation proceedings failed to provide him an opportunity for judicial review because they failed to afford him enough time to pursue state court efforts to undo his aggravated felony convictions. *Id.* § 1326(d)(2). And this, he says, rendered his deportation proceedings fundamentally unfair. *Id.* § 1326(d)(3).

Because Mr. Adame-Orozco's argument ultimately presents us with a purely legal question about the proper construction of § 1326(d), we review it *de novo*. *See United States v. Sandoval*, 390 F.3d 1294, 1297 (10th Cir. 2004). In doing so, we hold that his challenge fails at the second step of § 1326(d) because his federal deportation proceedings did not "improperly deprive[] [him] of the opportunity for judicial review." 8 U.S.C. § 1326(d)(2). We reach this holding in light of the statute's language and in consonance with its history.[7]

---

[7] In coming to this conclusion, we do not mean to imply that Mr. Adame-Orozco has satisfied the requirements of §§ 1326(d)(1) and (d)(3). It is unclear with respect to subsection (d)(1), for example, whether Mr. Adame-Orozco exhausted his available administrative remedies. While the parties before us all concede that he did appeal the IJ's deportation order to the BIA, Mr. Adame-Orozco does not allege that he sought a stay of deportation until he could finish his state court collateral attack on his drug convictions — the same remedy he now asks us to fault the IJ and BIA for failing to supply. But the government has

(continued...)

- 10 -

By its plain terms, § 1326(d)(2) provides that an alien prosecuted for illegal reentry "may not challenge the validity of *the deportation order*" unless the alien demonstrates that "*the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review.*" 8 U.S.C. § 1326(d) (emphasis added). In so doing, the statute imposes two significant limitations. First, the defendant may attack the prior deportation only by reference to the "proceedings at which the order was issued." Second, the defendant must limit this attack to the argument that those proceedings deprived him of judicial review of the deportation order itself. Unless the defendant's challenge fits within these narrow constraints, it isn't cognizable under § 1326(d)(2).

Notably, the statute does not speak of, let alone specify, any right in an illegal reentry proceeding to pursue a collateral attack on any *other* orders, judgments, or proceedings. And it supplies no stay of deportation while appellate or habeas proceedings may be ongoing in other matters. This doesn't mean, of course, that an alien lacks the opportunity to appeal or collaterally attack an aggravated felony conviction. Of course not. It merely means that he must do so in the traditional way, pursuant to state and federal laws governing criminal appeals and collateral review — and not in an illegal reentry prosecution.

<hr>

[7](...continued)
decided not to contest this issue, *see* Answer Br. at 17-18, and we need not pursue it further in light of our holding under subsection (d)(2).

There can be no genuine dispute that Mr. Adame-Orozco received what process § 1326(d)(2) promises. He freely admits that he was able to (and did) appeal the IJ's deportation order to the BIA, and he identifies no impediment to his ability to appeal the BIA's decision to a federal court. Where, as here, the statute's language is plain and plainly satisfied, "the sole function of the courts" can only be "to enforce it according to its terms." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (quotation marks omitted); *see also United States v. Saenz-Gomez*, 472 F.3d 791, 793 (10th Cir. 2007) ("If the statutory language is clear, our analysis ordinarily ends." (quotation marks omitted)).

Still, the statutory language tells us even more. The absence of any link between an alien's procedurally proper deportation proceedings and his ongoing challenge to an aggravated felony conviction is reinforced by the plain language of two more provisions: 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1101(a)(48)(A). Under 8 U.S.C. § 1227(a)(2)(A)(iii), an alien who is "convicted of an aggravated felony at any time after admission is deportable." And 8 U.S.C. § 1101(a)(48)(A), in turn, defines a "conviction" to mean, among other things, "a formal judgment of guilt." From this, it follows that an alien is lawfully deportable as soon as a formal judgment of guilt is entered by a trial court. Indeed, Congress adopted its § 1101(a)(48)(A) definition of "conviction" in 1996 specifically to supplant a prior BIA interpretation that had required deportation to

wait until direct appellate review (though never collateral review) of the conviction was exhausted or waived. *See Moosa v. INS*, 171 F.3d 994, 1000-02 (5th Cir. 1999).

Sections 1227 and 1101 confirm, then, that while the alien may have the right to pursue appellate or collateral relief for an aggravated felony conviction under various provisions of state and federal law, the government need not wait until all these avenues are exhausted before deporting him. We emphasized just this point in *Saenz-Gomez*, where we held that a defendant whose aggravated felony conviction was entered by a trial court was lawfully deportable nine days later, even though he had not yet had a chance to appeal — let alone collaterally attack — his conviction. *See* 472 F.3d at 793-94 (rejecting defendant's argument that "a judgment does not become a conviction within the meaning of 8 U.S.C. § 1326(b) . . . until the direct appeal process has been exhausted or waived").

Neither can we conceive any reasonable way to reconcile Congress's express commands in §§ 1227 and 1101 with Mr. Adame-Orozco's proposed reading of § 1326(d)(2). While §§ 1227 and 1101 authorize deportation immediately after a trial court's judgment of guilt, under Mr. Adame-Orozco's view of § 1326(d)(2) the BIA would have to postpone that deportation (at least for those it prophesies will later be tried for illegal reentry) until *after* an aggravated felony conviction can be tested not just through direct appeal but also through collateral attack. As a formal matter, the government wouldn't have to wait to

- 13 -

deport convicted aliens until after their convictions had survived direct and collateral review. But as a practical matter, Mr. Adame-Orozco would have the government do exactly that — at least for those who might be able to mount a meritorious challenge on their underlying criminal convictions — if it wanted to maintain the flexibility to prosecute deported aliens who later reentered the country illegally. In a sort of statutory sleight of hand, then, what §§ 1227 and 1101 give, Mr. Adame-Orozco's reading of § 1326(d)(2) would implicitly but significantly take away. While Mr. Adame-Orozco urges this result with vigor, he offers no rational explanation for such an unlikely interpretation of the statute's terms.[8]

If, as Mr. Adame-Orozco seems to imagine, Congress had essentially wished to take the step of affording aliens convicted of aggravated felonies with an automatic stay of deportation pending the completion of appellate and collateral review of their convictions, it knew well how to do so explicitly, rather than leave the job to judicial implication. Congress, after all, has expressly provided for stays of deportation elsewhere in the immigration laws. *See, e.g.*,

---

[8] The implausibility of Mr. Adame-Orozco's view of the statute may be further suggested by the fact that, since the enactment of § 1101(a)(48)(A)'s definition, the BIA has lawfully interpreted it to allow deportation of convicted aliens "notwithstanding a subsequent state action purporting to erase all evidence of the original determination of guilt through a rehabilitative procedure." *In re Roldan-Santoyo*, 22 I. & N. Dec. 512, 523 (BIA 1999) (en banc), *order vacated sub nom. on other grounds by Lujan-Armendariz v. INS*, 222 F.3d 728 (9th Cir. 2000); *see also Cruz-Garza v. Ashcroft*, 396 F.3d 1125, 1128-29 (10th Cir. 2005) (upholding BIA's interpretation).

- 14 -

8 U.S.C. § 1231(c)(2)(A)(i)-(ii).  The fact that it did not do likewise here is a textual point of comparison we are not entitled to ignore lightly.  *Cf. Custis v. United States*, 511 U.S. 485, 492 (1994) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citation and quotation marks omitted)).  Congress, after all, does not usually "hide [such] elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001).

Then there is also the matter of the statute's history.  Prior to the enactment of § 1326(d), the *validity* of the BIA's administrative deportation order was not essential to a conviction under § 1326(a).  *See United States v. Mendoza-Lopez*, 481 U.S. 828, 833-37 (1987).  All that was required, at least in certain circuits, was an administrative deportation order, a deportation, and a subsequent reentry in defiance of that deportation order.  *See id.* at 833 n.6 (detailing circuit split). The Supreme Court held, however, that this arrangement violated the Constitution's due process guarantee.  *Id.* at 837.  The Court explained that the defendant-alien in a § 1326(a) prosecution cannot be criminally sanctioned for defying a deportation order if he was never afforded any means to obtain judicial review of that deportation order.  *Id.* at 837-39.

Section 1326(d) was enacted in response to *Mendoza-Lopez* and in an effort to "incorporate[] [the Court's judgment] into statutory law."  Ira J. Kurzban,

*Immigration Law Sourcebook* 186 (10th ed. 2006); *see also United States v. Wittgenstein*, 163 F.3d 1164, 1170 (10th Cir. 1998). The statute's genesis was thus all about ensuring some form of judicial review of the administrative deportation proceedings — not the underlying criminal convictions for which other avenues of judicial review had already long existed. When, as here, a statute "is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947). And in this case, the lines in the soil contain no sign of the interpretive path Mr. Adame-Orozco would have us take. *See Mendoza-Lopez*, 481 U.S. at 839 n.17 (holding that "permitting collateral challenge to the validity of deportation orders in proceedings under § 1326 does not create an opportunity for aliens to delay deportation, since the collateral challenge we recognize today is available only in criminal proceedings instituted after reentry").[9]

---

[9] In response to all the foregoing, Mr. Adame-Orozco seeks to rely on *United States v. Copeland*, 376 F.3d 61 (2d Cir. 2004), which he reads to hold that "a person is deprived of judicial review [under § 1326(d)] when the time interval between entry of the final deportation order and physical deportation is too brief to obtain judicial review." Opening Br. at 9. But *Copeland* is easily distinguished. For one, that case dealt with an IJ who misinformed the alien about his right to pursue discretionary relief, and it was seemingly, albeit implicitly, premised on a belief that an alien has a constitutional right to be informed about such possibilities. *See Copeland*, 376 F.3d at 64, 68-70. Mr. Adame-Orozco, by comparison, does not allege that the IJ provided him with any misinformation, so *Copeland* simply does not speak to his case. For another, unlike the petitioner in *Copeland*, Mr. Adame-Orozco cannot show prejudice from

(continued...)

Having concluded that § 1326(d)(2) does not bear the promise of an automatic stay of deportation for those convicted of aggravated felonies, the question remains: What if Mr. Adame-Orozco is, at some future point, successful in his now-renewed effort to overturn his drug convictions in state court? Does he have some means available to him to seek recourse? The answer is, of course, that he might seek to petition for habeas relief in the normal course, and "if [he] is successful, he may then apply for reopening of any federal sentence enhanced by the state" conviction. *Custis*, 511 U.S. at 497; *see also United States v. Garcia*, 42 F.3d 573, 581-82 (10th Cir. 1994). What the appropriate outcome of such a habeas application might be we do not now purport to decide. *Cf. Custis*, 511 U.S. at 497 ("We express no opinion on the appropriate disposition of such an application."). For current purposes, it suffices to say that any relief must come through that traditional process, and not through § 1326(d).[10]

---

[9](...continued)
the loss of judicial review of his deportation order because he doesn't offer any reason to think the BIA erred in issuing such an order in his case. *See United States v. Lopez*, 445 F.3d 90, 100-01 (2d Cir. 2006). Beyond and in addition to all that, this circuit has held that an alien has no constitutional right to be informed of avenues of discretionary relief. *See United States v. Aguirre-Tello*, 353 F.3d 1199, 1205 (10th Cir. 2004) (en banc); *see also Ali v. Ashcroft*, 395 F.3d 722, 732 (7th Cir. 2005) (no right to discretionary relief); *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146-47 (11th Cir. 1999) (same); *cf. Trench v. INS*, 783 F.2d 181, 184 (10th Cir. 1986) (holding that due process does not require allowing a petitioner to "collaterally attack the legitimacy of [a] state criminal conviction[] in [a] deportation proceeding[]").

[10] Had Mr. Adame-Orozco remained abroad after his deportation, a BIA

(continued...)

* * *

We hold that § 1326(d) does not afford a license to bootstrap separate criminal proceedings into the process guaranteed to aliens facing deportation. Mr. Adame-Orozco was not improperly deprived of the opportunity for judicial review of his federal deportation order within the meaning of § 1326(d)(2) simply because the IJ and BIA declined to stay his deportation until he could complete a collateral attack on his state court aggravated felony convictions. The judgment of the district court is

*Affirmed.*

---

[10](...continued)
regulation would have precluded him from seeking to reopen and undo his deportation proceedings. *See Rosillo-Puga v. Holder*, 580 F.3d 1147, 1151 (10th Cir. 2009) (quoting 8 C.F.R. § 1003.2(d)). Nonetheless, the Executive can and sometimes may facilitate the return to the United States of aliens "who were removed pending judicial review but then prevailed before the courts." Brief for the Respondent at 44, *Nken v. Holder*, 129 S. Ct. 1749 (2009) (No. 08-681) (citing 8 U.S.C. § 1182(d)(5)).