FILED
United States Court of Appeals
Tenth Circuit

June 9, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

RAMON VARELA-CIAS,

    Defendant-Appellant.

No. 10-2191

(D.C. No. 1:10-CR-00420-JAP-1)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE,** Chief Judge, **EBEL** and **HOLMES**, Circuit Judges.

Defendant Ramon Varela-Cias (Varela-Cias) appeals the district court's denial of

his motion to dismiss an information charging him with illegal re-entry after removal in

violation of 18 U.S.C. § 1326(a).  Varela-Cias argues that he cannot be charged with

illegal re-entry because his initial removal from the United States in 2001 was unlawful.

An alien may collaterally attack the validity of a deportation order only if all three

requirements set forth in 8 U.S.C. § 1326(d) are met.  As we conclude Varela-Cias's

deportation proceedings did not improperly deprive him of his opportunity for judicial

review [8 U.S.C. § 1326(d)(2)], we exercise our jurisdiction pursuant to 28 U.S.C. §

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

1291, and affirm.

**I**

*Factual Background*

In 1990, Varela-Cias, who had been living in the United States with his wife and children since 1979, became a lawful permanent resident of the United States as a seasonal agricultural worker. In December 2000, Varela-Cias was convicted of driving under the influence in Bingham County, Idaho. See Idaho Code Ann. § 18-8004(1)(a). Because this was his third DUI conviction, the offense was considered a felony under Idaho law. See id. Varela-Cias was sentenced to a one-year term of imprisonment with the Idaho Bureau of Prisons.

In May 2001, United States Immigration and Customs Enforcement (ICE) served Varela-Cias with a notice to appear informing him that under section 237(a) of the Immigration and Nationality Act (INA), he could be subject to removal because he had been convicted of an "aggravated felony" as defined in the INA. See 8 U.S.C. § 1101(a)(43)(F). Varela-Cias was subsequently transferred from the Idaho penitentiary to an immigration detention center in Aurora, Colorado.

Varela-Cias hired an attorney from Idaho to represent him at the June 2001 removal hearing before the Immigration Judge (IJ) in Colorado. Varela-Cias's attorney appeared telephonically at the hearing. At the hearing, the IJ concluded that Varela-Cias

2

had been convicted of an aggravated felony[1] under the INA and ordered that he be

deported to Mexico.  See id.  After the IJ issued his order, the following exchange took

place between the IJ and Varela-Cias's attorney:

> IJ: Now if you wish you may file an application for cancellation of removal
> to preserve the record on appeal, but I don't believe [Varela-Cias] is eligible
> so I would not give you a hearing.  But at least you could put it on the
> record.
> . . .
>
> IJ: Counsel, did you wish to reserve your right to appeal or waive your right
> to appeal?
>
> Attorney: . . . I would like to reserve the right to appeal [and] discuss with
> the family their options.
>
> IJ: . . . Your appeal is reserved, sir, and the deadline for your appeal will be
> August 6th, [which] is the final day where the appeal can actually be
> received at the Board of Immigration Appeals.

ROA, Vol. 1 at 44, 49.

---

[1] At the time of Varela-Cias's removal in 2001, there was a split among the circuit courts regarding whether state DUI felony convictions were crimes of violence under 18 U.S.C. § 16 and therefore aggravated felonies and removable offenses under the INA. Compare Dalton v. Ashcroft, 257 F.3d 200, 208 (2nd Cir. 2001) (holding that DWI conviction in New York is not a removable offense) with Tapia-Garcia v. INS, 237 F.3d 1216, 1223 (10th Cir. 2001) (holding that a conviction under Idaho's felony DUI statute was a crime of violence).  In 2004, three years after Varela-Cias was removed, the Supreme Court resolved this split and held that felony DUI convictions under statutes that (like the statute in Idaho) required only a showing of negligence in the operation of a vehicle were not crimes of violence.  Leocal v. Ashcroft, 543 U.S. 1, 11 (2004).  The parties agree that Leocal applies retroactively.  United States v. Rivera-Nevarez, 418 F.3d 1104, 1107 (10th Cir. 2005) (holding that "decisions of statutory interpretation are fully retroactive because they do not change the law, but rather explain what the law has always meant").  They also agree that based on Leocal, Varela-Cias should not have been removed from the United States in 2001 on the basis of his felony DUI conviction in Idaho.

Varela-Cias filed a request for cancellation of removal and appealed the IJ's removal order to the Board of Immigration Appeals (BIA), arguing that felony DUI is not a crime of violence and therefore cannot be considered an aggravated felony for removal purposes. On October 31, 2001, the BIA summarily denied Varela-Cias's appeal as follows: "The Board affirms, without opinion, the results of the decision below." Id. at 72. In compliance with federal regulations, the BIA sent a copy of its ruling to Varela-Cias's attorney. See 8 C.F.R. § 1003.1(f) (requiring service of BIA decisions "upon the alien or party affected"); 8 C.F.R. § 292.5 (requiring that when an alien is represented by an attorney, service be made upon the alien's attorney).

In February 2010, Varela-Cias was found in the United States and charged with illegal re-entry following removal in violation of 18 U.S.C. § 1326(a) and (b). Varela-Cias moved to dismiss the information, arguing that he cannot be charged with illegal re-entry because he was removed from the United States in violation of his due process rights. The district court denied the motion to dismiss. This appeal timely followed.

## II

### *Standard of Review*

"When a previous deportation proceeding is attacked on constitutional grounds, we are presented with a mixed question of law and fact, which we review de novo." United States v. Aguirre-Tello, 353 F.3d 1199, 1204 (10th Cir. 2004).

*Analysis*

A.     *Collateral Attack of Removal Order*

In 1987, the Supreme Court held that a defendant charged with illegal re-entry under 18 U.S.C. § 1326 may collaterally attack a previous removal order under the due process clause of the Fifth Amendment. United States v. Mendoza-Lopez, 481 U.S. 828, 837-38 (1987). The due process clause requires that aliens facing removal receive notice of the charges, a hearing before an executive or administrative tribunal, and a fair opportunity to be heard. Kwong Hai Chew v. Colding, 344 U.S. 590, 597-98 (1953).

In 1996, in response to Mendoza-Lopez, Congress codified the right to collaterally challenge a removal decision, and set forth the circumstances under which an alien may make such a challenge. See 8 U.S.C. § 1326(d)(1)-(3). Under this statute, an alien may collaterally challenge the validity of a deportation order if:

(1) the alien exhausted any administrative remedies that may have been available at the time of his deportation;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

Id. (emphasis added).

"[A] deportation order enjoys a presumption of regularity." United States v. Adame-Orozco, 607 F.3d 647, 651 (10th Cir. 2010). Accordingly, "once the government shows that the alien was deported while such an order was outstanding, the burden shifts to the defendant-alien, and it is he who must prove each of § 1326(d)'s elements to

5

overcome the presumed legality of the earlier deportation order." Id. (citing United States v. Arevalo-Tavares, 210 F.3d 1198, 1200 (10th Cir. 2000)). The parties agree that Varela-Cias exhausted all administrative remedies available to him. They dispute, however, whether the deportation proceedings improperly deprived Varela-Cias of the opportunity for judicial review and whether entry of the deportation order was fundamentally unfair.

B.     *Opportunity for Judicial Review*

Varela-Cias alleges he was deprived of the opportunity for judicial review because (1) the government failed to notify him of the BIA decision prior to removal; (2) the government removed him from the country while he still had seventeen days left to appeal the BIA's decision; (3) the government denied his request to call his attorney prior to removal; (4) the IJ did not inform him of his right to file an appeal in federal court; (5) the government detained him in a detention facility in Colorado, far away from his family and his attorney; and (6) the IJ misinformed him that he was ineligible for any form of relief from deportation.

1.     *Events outside the Deportation Proceedings*

Three of Varela-Cias's six claims fail because they do not relate to the proceedings at which the IJ ordered his removal. Section 1326(d)(2) states that an alien prosecuted for illegal reentry "may not challenge the validity of *the deportation order*" unless he or she demonstrates that "*the deportation proceedings at which the order was issued* improperly deprived the alien of the opportunity for judicial review." 8 U.S.C. § 1326(d) (emphasis

6

added).

In United States v. Adame-Orozco, we held that 8 U.S.C. § 1326(d) creates two important limitations to collateral attacks. 607 F.3d at 652. "First, the defendant may attack the prior deportation only by reference to the proceedings at which the order was issued." Id. (citation omitted). "Second, the defendant must limit this attack to the argument that those proceedings deprived him of judicial review of the deportation order itself." Id. "Unless the defendant's challenge fits within these narrow constraints, it isn't cognizable under § 1326(d)(2)." Id.

Three of Varela-Cias's six claims clearly do not fall within § 1326(d)(2) because they do not relate to the "proceedings at which the [deportation] order was issued." 8 U.S.C. § 1326(d)(2). Varela-Cias's arguments—that the government (1) removed him before his appellate rights had been fully exhausted; (2) denied his request to call his attorney prior to removal; and (3) wrongfully detained him in a detention facility in Colorado—all fail under § 1326(d)(2) because they arise out of ICE's handling of Varela-Cias's deportation, not from the actual proceeding in which the IJ ordered his removal. Because these arguments fall outside the "narrow constraints" of § 1326(d)(2), they do not support Varela-Cias's argument that he was denied the opportunity for judicial review. See Adame-Orozco, 607 F.3d at 652.

Varela-Cias argues his fourth claim—that the government failed to notify him of the BIA's adverse decision—relates directly to the "proceedings at which the [deportation] order was issued" and may therefore be raised in a § 1326(d)(2) collateral

7

challenge. According to Varela-Cias, this claim may be asserted under § 1326(d)(2) because, as a result of the BIA's failure to provide notice of its adverse decision, he was unable to appeal the decision in federal court. Aplt. Reply at 6. For the purposes of this appeal, we need not decide whether the lack of notice to an alien of the BIA's final decision is a challenge that may be asserted under § 1326(d)(2) because even if we assume Varela-Cias could raise this challenge he loses on the merits. Varela-Cias concedes that the BIA mailed a copy of its decision to his attorney, and 8 C.F.R. § 292.5 requires nothing more than that the BIA provide notice of its ruling "to . . . the attorney or representative of record, or the person himself if unrepresented." See also Martin v. Mukasey, 517 F.3d 1201, 1203 (10th Cir. 2008) (holding that the Department of Homeland Security provided an alien with sufficient notice of removal proceedings by mailing notice to the alien's counsel).

### 2. The Deportation Proceedings

Varela-Cias does make two arguments that relate directly to the removal hearing itself. He claims he was deprived of his right to judicial review because (1) the IJ incorrectly informed him that he was ineligible for any relief from deportation, and (2) the IJ failed to inform him of his right to file an appeal in federal court.

### a. Misinformed by the Immigration Judge

Varela-Cias claims he was denied the opportunity for judicial review when the IJ informed him that he was ineligible for relief from deportation. The IJ told Varela-Cias that he was not "eligible" for relief, but that he could still file a request for cancellation of

8

removal as well as an appeal to the BIA. ROA, Vol. 1 at 44. Varela-Cias argues that the IJ's statements prejudiced his right to judicial review because, as the district court noted, "at the time he was removed, he was in fact not an aggravated felon and was eligible for cancellation of removal in addition to being non-removable." Id. at 209-10.

We conclude that the IJ did not mislead Varela-Cias regarding his ability to appeal the deportation order. Although the IJ informed Varela-Cias that, in his view, he was not entitled to relief from deportation, the IJ expressly stated that Varela-Cias could nonetheless file a request for cancellation of removal and an appeal with the BIA. Id. at 44. Thus, while the IJ erred in concluding that Varela-Cias had committed an aggravated felony, the IJ did not deprive Varela-Cias of the right to judicial review because he specifically informed him of his right to appeal to the BIA. And as noted by the district court, the fact that Varela-Cias filed an appeal with the BIA, see id. at 211, "undermine[s] his argument that he was persuaded to forego judicial review in response to the IJ's statements." Id. Because Varela-Cias appealed the IJ's order of removal, we conclude that he was not denied the opportunity for judicial review.

### b. Failure to Inform of Right to Appeal in Federal Court

Varela-Cias also argues that the IJ denied him the opportunity to obtain judicial review by failing to inform him of his right to file an appeal in federal court. In so arguing, Varela-Cias asks us to follow the precedent set forth in United States v. Santos-Vanegas, in which the Eighth Circuit held that the IJ has an obligation to inform the alien of "his opportunity to pursue further challenge in federal court." 878 F.2d 247, 251 (8th

9

Cir. 1989).

We decline to address this argument because Varela-Cias never argued in the district court that the IJ should have informed him of his right to file an appeal in federal court. In his motion to dismiss the information, Varela-Cias alleged that his right to judicial review had been violated because he was sent to a detention facility in Colorado, because he was deported when he still had seventeen days left to appeal the BIA's decision, and because the IJ informed him that he was ineligible for any form of relief from deportation. See ROA, Vol. 1 at 23-27. Varela-Cias did not raise the argument, at any point in the district court proceedings, that the IJ should have informed him that he could file an appeal in federal court. We do "not consider issues which are raised for the first time on appeal unless a party demonstrates an impediment which prevented raising the argument below." United States v. Dewitt, 946 F.2d 1497, 1499 (10th Cir. 1991). Since Varela-Cias does not allege that he was impeded from raising this argument in the district court, it is not properly before us.

As cited above, 8 U.S.C. § 1326(d)(1)-(3) permits an alien to collaterally attack the validity of a deportation order only if the alien has exhausted all administrative remedies, has shown that the deportation proceedings at which the deportation order was issued improperly deprived the alien of the opportunity for judicial review, and has shown that entry of the deportation order was fundamentally unfair. Because we conclude that Varela-Cias was not denied the opportunity for judicial review, we do not address his assertion that the IJ's removal order was fundamentally unfair.

10

## III

The judgment of the district court is AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Chief Judge

11